# Hutchinson, Appellant, v. Goshorn.

*Election law—Appointment of registrars—Discretion of board of
registration commissioners—Ward executive committees—Act of
July 24, 1913, P. L. 977.*

A board of registration commissioners has discretionary author-
ity as to the appointment of election registrars under the provisions
of the Act of July 24, 1913, P. L. 977, and is not compelled to ap-
point or reappoint persons suggested to them for appointment or
reappointment by ward executive committees.

Argued Oct. 20, 1916.　Appeal, No. 175, Oct. T., 1916,
by plaintiff, from decree of C. P. Allegheny Co., Oct. T.,
1916, No. 981, dissolving preliminary injunction in case
of Harry Hutchinson, on his own behalf and in behalf
of all interested persons who may desire to become par-
ties plaintiff v. L. R. Goshorn, David Lawrence, J. Scott
Morgan and W. L. McCullagh.　Before BROWN, C. J.,
POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.　Ap-
peal dismissed.

Bill in equity for an injunction.

The facts appear in the following opinion by SWEAR-
INGEN, J.:

Harry Hutchinson filed this bill on his own behalf
and in behalf of all others who might desire to become
parties and contribute to the expenses.　The complain-
ant is the chairman of the ward executive committee of
the Republican party of the Seventh ward of the City of
Pittsburgh, Pennsylvania.　No other persons have in-
tervened nor asked to be made parties to the proceedings.
The defendants constitute the Board of Registration
Commissioners of the City of Pittsburgh, duly appointed
and qualified under the provisions of the act known as
the "Personal Registration Act," approved July 24, 1913,
P. L. 977.　Upon presentation of the bill, together with
injunction affidavits, a preliminary injunction was

granted, and Tuesday, August 15, 1916, was fixed as the time for hearing. By agreement of the parties the hearing took place on Monday, August 14, 1916, when the testimony was taken and the arguments were concluded August 15th.

The complainant averred that pursuant to the provisions of said registration act, the ward executive committee of the Republican party for the Seventh ward of the City of Pittsburgh suggested the names of two qualified persons for appointment as registrars for the ensuing year, in each election district of said ward, among whom were the following:

William J. Best, first district, reappointment;

August Trautman, third district, original appointment;

Frank P. Meyer, sixth district, reappointment;

Harry W. Normecutt, eighth district, original appointment;

Henry P. Krebs, ninth district, reappointment;

F. W. Schwartz, eleventh district, original appointment;

Frank A. Minnemeyer, eleventh district, reappointment.

He further averred that by letter of August 5, 1916, the Board of Registration Commissioners, the defendants, notified him that the above named parties had failed to meet the approval of the commissioner and advised him that the committee might suggest other persons for the consideration of the board. He then charged that the defendants have no authority to refuse to appoint the above named William J. Best, Frank P. Meyer, Henry P. Krebs, and Frank A. Minnemeyer, who were all applicants for reappointment, nor had the board any right or authority to refuse the appointment of August Trautman, Harry W. Normecutt and F. W. Schwartz, who were applicants for original appointment, because it has no discretion under the statute as to the appointment of those persons who have been suggested by the ward

executive committee for reappointment, and because in so far as it has discretion as to the appointment of persons suggested for original appointment, the board had acted illegally and arbitrarily and contrary to the act. It was further charged that the defendants had refused to make said appointments for the purpose of selecting unlawfully, illegally, etc., other persons as registrars. There was no evidence to sustain this charge.

At the hearing it appeared that the above suggestions were not made by the ward executive committee; they were made by the complainant as chairman after consultation with the chairmen of the respective districts in the ward and by their authority. This appears to have been the custom that has prevailed throughout the wards of the City of Pittsburgh. The custom probably arose under the previous Act of Feb. 17, 1906, P. L. 49, which, however, has been changed by the Act of 1913. We have no disposition to dispose of the case upon this proposition, but we suggest that both the Board of Registration Commissioners and the ward committees note the provisions of this Act of 1913, which declares that the names shall be suggested to the commissioners "by the ward executive committees" and that the petitions shall be signed "by the president and one secretary" of the ward executive committee. This language indicates that the chairman and the secretary are but the agents of the committee and that the suggestion ought to come from the committee itself.

There is grave doubt whether the complainant is a party who has standing to invoke the powers of a court of equity in such a case as this. He is but the chairman of a ward executive committee and as such it is difficult to perceive what "property right" of his may be infringed by any act of the defendants relative to the matter in controversy. Ordinarily the powers of a court of equity can only be invoked where some right in property is imperiled: Bispham's Equity, page 642; Kearns & Smith v. Howley et al., 188 Pa. 116.

Another suggestion is that for the alleged wrongs there are adequate remedies at law, and consequently there is no jurisdiction in equity. It is true that for failure to perform a duty enjoined mandamus will generally lie. It is likewise true that the only way to try the title to an office is by proceedings in quo warranto. The argument is that, if these appointments have not been made, the remedy is by mandamus to compel performance of the duty, providing such duty is enjoined by the statute; that in case the appointments have been made of other persons than the ones suggested by the ward committee the remedy is by writ of quo warranto.

But however the above suggestion may be, we are of opinion that the complainant is not entitled to the relief he demands under the facts and circumstances disclosed. His proposition is that the ward executive committee constitutes the fountain head of appointment of registrars, and that the board of commissioners must reappoint a candidate suggested by the ward committee, who had previously served in the capacity of registrar if he is not unfit; and that it cannot disregard the suggestions of a ward committee unless the applicant is unfit, in case of an original appointment. In other words, the proposition of the complainant is, when reduced to its last analysis, that the board of commissioners in the matter of appointing registrars has substantially no discretion as to qualification and fitness for the positions, but must follow the suggestions of the ward committee. This proposition was ably and earnestly urged by the learned counsel for the complainant and they contend that such is the plain meaning of the fifth section of the Act of 1913 above mentioned. It is not pretended that the duty of appointing registrars has been expressly committed to the ward committees. The contention is that this duty is inferable from the language of the statute. This requires an examination of said section.

The first sentence of said section is as follows:

"The Commissioners shall, not later than August fif-

teenth of each year, appoint four registrars for each election district, as herein provided."

The language quoted is certainly nòt ambiguous. Plainly the duty of appointing these registrars is thereby vested in the board of commissioners. Had the legislature intended that the sole duty of the board of commissioners was to register the will of the ward committees, why did it not say so? If the intention was to vest the ward committees with the power of naming these registrars, it is difficult to understand why the legislature did not impose that duty upon the ward committees directly, instead of in the manner indicated in the act as claimed by the complainant. The fact that the duty is expressly committed to the commissioners is pregnant in ascertaining the meaning of the statute. There is no provision in this long section which, in our judgment, sustains the contention of the complainant. On the other hand it is expressly provided that no appointment shall be made unless the candidate shall have personally appeared before the commissioners and satisfied them of his qualifications. This shows that the commissioners must supervise and must consider, in addition to petitions, the personality of the applicant. There is a further provision that, in case of a reappointment, this personal appearance of the candidate shall not be necessary. We cannot regard this as any more than a direction to the commissioners as to how they shall exercise the discretion vested in them. If a man has once been found qualified, after personal examination, this provision merely dispenses with a vain proceeding. There is no command that a party who has once served must be again appointed if suggested by a ward committee. On the other hand, the express direction of the first sentence is that the commissioners shall "appoint four registrars" each year. Besides the above there is a provision that if the persons nominated are not found properly qualified, the board may decline to appoint them and then the ward committee shall suggest other names.

Finally the appointment of any registrar must be approved by three commissioners.   This is in line with the fourth section of the act, which declares that the concurrence of three commissioners shall be necessary to any affirmative action.

In view of the foregoing we are driven to the conclusion that the contention of the complainant is not well founded.   Our duty here is to construe the statute as it has been enacted by the legislature.   We are of opinion that to adopt the proposition of the complainant would be to strain the language of the statute improperly on our part.   If the legislature, in its wisdom, intended that the ward executive committees should exercise the discretion of appointing these registrars, it should have been stated in unmistakable language and should not have been left to mere construction or doubtful inference. It was not seriously contended by the complainant that the evidence established illegality or arbitrary conduct on the part of the board of commissioners, in case it were held that the discretion in the matter of appointing registrars was vested in the board.   Having determined that the plain meaning of the statute is that the discretion is vested in the board, the charge of illegality and arbitrary conduct fails.

The court dissolved the preliminary injunction. Plaintiff appealed.

*E. K. Trent,* of *Prichard & Trent,* for appellant.

*Charles A. Poth,* for appellee.

Per Curiam, January 8, 1917:

The appeal in this case is dismissed, at appellant's costs, on the opinion of the learned chancellor below dissolving the preliminary injunction.