**FLETCHER, Plaintiff, v. CONEY ISLAND, INC., Defendant.**

Common Pleas Court, Hamilton County.

No. A-139328.    Decided July 21, 1954.

268

Walter S. Houston, Michel M. Turpeau, Cincinnati, for plaintiff.

Rendigs, Frey & Kiely, Cincinnati, for defendant.

## OPINION

By WEBER, J.:

The plaintiff, Ethel Fletcher, alleges that she is a negro, a citizen of the United States and of the State of Ohio; that the defendant is the proprietor and operator of Coney Island Park, a place of public accommodation and amusement in Hamilton County, Ohio; that on the second day of July and also on the 4th day of July, 1953, she tendered payment of the admission price to Coney Island Park but that the defendant refused to admit her and aided and incited others who were under contractual relations with the defendant to refuse admission to the plaintiff and thereby on said days denied to the plaintiff the full enjoyment of the accommodations, advantages, facilities and privileges of Coney Island and that said refusals were in violation of §§12940, 12941 and 12942 GC. Said Sections are now §§2901.35 and 2901.36 R. C., and read as follows:

Sec. 12940 GC. (Denial of privileges at restaurants, stores and other places by reason of color or race.) Whoever, being the proprietor or his employee, keeper or manager of an inn, restaurant, eating house, barber shop, public conveyance by air, land, or water, theater, store or other place for the sale of merchandise. or any other place of public accommodation or amusement, denies to a citizen, except for reasons applicable alike to all citizens and regardless of color or race, the

full enjoyment of the accommodations, advantages, facilities or privileges thereof, or, being a person who aids or incites the denial thereof, shall be fined not less than fifty dollars nor more than five hundred dollars or imprisoned not less than thirty days nor more than ninety days, or both.

Sec. 12941 GC. Further penalty. Whoever violates the next preceding section shall also pay not less than fifty dollars nor more than five hundred dollars to the person aggrieved thereby to be recovered in any court of competent jurisdiction in the county where such offense was committed.

Sec. 12942 GC. Bar to prosecution. Either a judgment in favor of the person aggrieved, or the punishment of the offender upon an indictment under the next two preceding sections, shall be a bar to further prosecution for a violation of such sections.

Plaintiff prays for a permanent injunction, restraining the defendant and those under contractual relations with the defendant, from denying plaintiff admission to Coney Island Park and the full enjoyment of all the accommodations thereof, because of her race or color or for any other reason not applicable alike to all citizens.

In its amended answer defendant denies that on said days it operated Coney Island Park as a place of public accommodation, but that on said days Coney Island Park was operated under outing contracts, on the 2nd day of July, 1953. with the Second-Third Ward Civic and Social Club of Dayton, Kentucky, and on July 4, 1953, with the Guiding Star Lodge, Knights of Pythias, of Dayton, Kentucky; that said contracts vested in said organizations respectively the exclusive right to designate the persons who might or might not be admitted to Coney Island Park on said days respectively; that on said days the defendant received instructions from said organizations, respectively, to refuse admission to any member of the National Association for the Advancement of Colored People or any member of the Cincinnati Council on Human Relations, or persons acting in concert with them, because of previous unlawful disorderly subversive conduct of said groups, which conduct was detrimental to the peace and safety of the members and guests of said outing organizations and of the citizens of the State and rendered the members of said groups undesirable persons at said picnics. The amended answer further alleges that under said policy and instructions white member as well as negro members of the N. A. A. C. P. and of the C. C. H. R. were excluded from Coney Island Park on said days and that said cause of exclusion was applicable alike to all citizens. The defendant also denies that the plaintiff is without adequate remedy at law.

The plaintiff filed a general denial.

In reaching its conclusions in this particular case, the Court cannot be concerned with the wisdom of the provisions of the statutes involved or with the effects upon the operation of Coney Island Park consequent upon the enforcement of these provisions. The only concern of the Court is whether under the facts proved in this particular case, said provisions of the statutes have been violated and whether there is threatened continued violations which entitle the plaintiff to equitable relief by way of a permanent injunction.

From the testimony of various witnesses and from pictures taken, it is shown that on a number of Sundays in May, June and July, 1952, when the park was open to the general public, groups consisting of about six negroes and of about twenty white persons created considerable disturbance near the entrance gates of Coney Island Park. Some carried banners in an attempt to picket the park. A car partly in the auto entrance and partly in the public highway refused to obey the order of the police to turn away from the auto gate and proceed on the public highway beyond the park entrance. One auto was locked and abandoned and had to be towed away. Traffic was blocked for some time. The pedestrian entrance was also blocked by at least one person lying flat on the ground. There was no physical violence. There was considerable resentment by persons who desired to enter the park. It is not absolutely certain whether the blocking of the entrance and the other disturbances were the result of or the cause of refusal to admit these persons to the park. One arrest was made. There was uncontradicted testimony that some of the people who caused the disturbances admitted to the agents of the defendant that they were members of the N. A. A. C. P. or the C. C. H. R., or both.

The plaintiff testified that she was a member of the N. A. A. C. P.; that she had never been in the park; that on July 2nd and July 4th, 1953, she offered to pay the admission price and was refused admission on each day for substantially the same reason, that is, she was told by the gatekeeper that he had been instructed to admit no one who was a member or was suspected of being a member of N. A. A. C. P. or C. C. H. R., or in any way connected with them. The agents of the defendant testified to the same effect and that on the days she was refused admission it was not actually known to the defendant's agents that the plaintiff was a member of N. A. A. C. P. Three other negro women, two of whom were members of the N. A. A. C. P., were refused admission on July 2nd or July 4th, 1953, and that the same reason was given, and at the

same time white people were being admitted without questioning. Two white women testified that they were admitted, one on July 2nd and the other on July 4th and that they were not questioned and that white people were admitted without questioning. One of these women had been a member of. N. A. A. C. P. for a long time and had carried a banner on one of the days in 1952. These women knew nothing about organizations which had contracted for the park on those two days. Another white woman testified that she was with a negro woman on June 30, 1953 and was refused admission. On July 4th she was admitted and loitered near the gate a short while. Later she was apparently recognized as being there on June 30th and her admission price was refunded and she was told to leave because she was suspected of being a member of N. A. A. C. P. or C. C. H. R. Although no official action was taken by either of these organizations with respect to the occurrences on July 2nd and July 4th, 1953, the visit to the park by the plaintiff and the other witnesses on those days was the result of some prearrangement among them and an official of N. A. A. C. P., known to the gatekeeper, took moving pictures.

The first question presented is whether on July 2nd and July 4th, 1953, the days on which the plaintiff was refused admission, the normal character of Coney Island Park as a place of public accommodation was altered by reason of the contracts in operation on those two days. Said contracts are in evidence as Exhibits 5 and 6, the pertinent parts of which are in printed form and are as follows:

"The first party (Coney Island, Inc.) agrees that the second party shall have the exclusive right to designate the persons who may or may not be admitted on the day of the outing * * *."

"The first party agrees to carry out instructions of the second party by limiting the admission * * * to persons and guests of the second party."

"Both parties agree that the first party shall have the right to use the usual advertising media for the purpose of encouraging attendance of members and guests of the second party and that such advertisements shall not be construed to be a general invitation to the public to attend the second party's outing in violation of this agreement."

These provisions transferred to the contractee the rights of exclusion which the defendant had, but only such rights as the defendant had under the statutes. If the park was open to the general public, only such causes of exclusion as are defined by the statute were permissible, whether the right of exclusion was

exercised directly or indirectly by the contracting group or the defendant. The defendant reserved the right to use the usual advertising media for the purpose of increasing attendance, that is, the defendant reserved the right to and did appeal to the public in its customary manner to patronize the park on those days. Whether the members of the public who responded to the appeal were designated as guests of the groups with whom the contracts were made or as guests of the defendant does not alter the fact that the invitation was made to the general public. Nor does the stipulation that the making of such an appeal should not be considered as a violation of the contract change the nature of the appeal; in fact, such provision is a recognition by the terms of the contract that others than members or guests of the contracting group were to be invited. The procedure practiced with reference to these days was consistent with the above interpretation. The manager of the defendant testified that at least some of the advertising was general and contained no reference to the contracting groups and in substance just stated: "Come to Coney Island." The fact that the attendance on July 2, 1953 was about 5,500 and on July 4, 1953 about 35,000 also indicates that the park was open to the public generally and many came who knew nothing of the contracting groups. The manager also testified that the defendant has another printed form of contract which clearly gives exclusive possession and gave illustrations of its use; he admitted that the two contracts herein involved do not give exclusive use.

The Court holds that the normal character of Coney Island Park as a place of public accommodation remained unchanged on July 2nd and on July 4th, 1953.

The second question is whether the plaintiff was denied admission to the park on July 2nd and July 4th, 1953 for a reason applicable alike to every citizen and regardless of race or color. The following facts were uncontradicted and some of them were expressly admitted by the agents of the defendant:

That over the years rarely had a negro patron been seen in the park, and then perhaps they were children with such groups as 4-H. On July 2nd the attendance was 5,500 and on July 4th 35,000 but no negro was admitted on those days. Four witnesses. including the plaintiff, who claimed they were refused admission on said days, were negroes. One white woman, after gaining admission to the park without being questioned, was recognized as a person who was refused admission on June 30th, at which time she was with a negro. Her admission price was refunded and in compliance with the request to do so she left the park. All other white persons admitted on those days were

not questioned. A great majority of the members of the N. A. A. C. P. and C. C. H. R. are negroes.

In view of these uncontradicted facts it-seems incredible that the exclusion of the plaintiff and the three other negroes on July 2nd and on July 4th, 1953. was totally without regard to race or color. However, the testimony of all the witnesses is that the gatekeeper of the defendant told those who were denied admission that he was instructed to exclude them because they were members or were suspected of being members or were associated with members of either the N. A. A. C. P. or the C. C. H. R. and that these groups were trouble makers. The conclusion that these organizations were trouble makers was based upon the occurrences near the gates of the park during the summer of 1952, when the so-called trouble makers consisted of about six negroes and about twenty white people.

Unquestionably the defendant owes a duty to protect the safety and peace of its patrons. If the defendant were negligent in admitting, or in allowing to remain in the park, a trouble maker whose conduct later injured a patron, the defendant would be liable. In other words, the defendant not only had the right but the duty to exclude a known trouble maker and such individual disqualification would be a reason applicable alike to all citizens. But the evidence is positive that the plaintiff never made any trouble either inside or outside of the park, either on July 2nd or July 4th or previously. The plaintiff applied for admission and when refused quietly left. At the times she was refused admission she was not personally known to the gatekeeper and it was not then known that she or any of the persons who accompanied her belonged to the so-called troublesome organizations. Her rejection was based upon a suspicion apparently founded upon the fact that a known member of the N. A. A. C. P. was seen taking her picture.

In case No. 7814, Court of Appeals, First Appellate District of Ohio, hereinafter referred to, it was held that a case in which the petition stated facts similar to the facts stated in the petition in this case could not be prosecuted as a class suit. The right created by the statute is personal and is conferred upon every citizen regardless of race or color. To succeed before the Court, the individual plaintiff must prove that she personally was wrongfully excluded from the park. In order to defeat such litigation the defendant must prove that the plaintiff was excluded because she had a personal disqualification which would be a proper cause for the exclusion not only of the plaintiff but also of every citizen who personally possessed that disqualification. Since the plaintiff cannot

bring a class suit and litigate the rights of all the parties to a group to which she may belong, it seems to follow that the plaintiff cannot be charged with a disqualification of a group or some members of the group of which she is a member or with which she associates, if she is personally without fault. The right being personal, can be lost only by reason of a personal fault which would be applicable to every other citizen. There is no evidence which would reasonably justify the defendant in the belief that if the plaintiff were admitted to the park, she would cause physical injury to the property of the park or physical injury to any person in the park or deprive any other person of the right and opportunity to fully enjoy the facilities of the park. If the plaintiff's personal conduct is proper, the fact, if it be a fact, that her mere presence in the park offends other persons who have under the statutes only the same right as the plaintiff to the full enjoyment of the facilities of the park, is no cause under the statutes for denying the plaintiff admission to the park. The blanket exclusion of all members and of all persons who associate with members of a particular group or organization, because of the misconduct of some members, and without regard to the fact that a particular person who may be affected by such blanket exclusion is without personal fault, is not a reason applicable alike to all other citizens.

The Court holds that the reason assigned for denying the plaintiff admission to the park on July 2nd and on July 4th, 1953 is not a reason applicable alike to all citizens.

The third question presented is whether, in view of the provisions of the statutes and the evidence in this case, the plaintiff is entitled to a permanent injunction. In the case of **Vivian Colbert, et al. v. Coney Island, Inc.,** No. 7814, First Appellate District Court of Ohio, a visiting Court affirmed the trial court's decision that a case wherein the petition alleged facts similar to those alleged in the petition herein, could not be prosecuted as a class suit. It was also argued in the trial court that the remedies given by the statutes were exclusive and adequate and therefore injunctive relief could not be granted, but the trial court did not pass upon this question. In the Court of Appeals it was again fully argued that the remedies provided by the statutes were exclusive and adequate and, although the Court affirmed the decision of the trial court, by a two to one decision, on the ground that the case was not a proper class suit, the Court unanimously made the following declaration:

"We concur, however, with the pronouncement of the Massachusetts Supreme Court in Kenyon v. Chicopee, 70 N. E. 2nd.

241, 175 A. L. R. 430, that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights. In the instant case, the plaintiffs set up a right given them under the law of Ohio and the deprivation thereof by a continued course of conduct on the part of the defendant. Upon the face of the petition, it appears that a substantial right of the plaintiffs will be impaired to a material degree unless relief be granted and that the remedy at law is inadequate.

"* * * Without prejudice to the rights of the several plaintiffs to separately prosecute in equity their several causes of action, the judgment of the common pleas court is affirmed on the ground of misjoinder of parties."

The above statement is positive and apparently was made after due consideration of the arguments and briefs and consequently should be given considerable weight by this Court. Nevertheless, technically it is obiter dictum and therefore this Court may and should give some original consideration to this question.

For violation of its provisions the statute gives two remedies:

1. A criminal prosecution;

2. A fine of not less than fifty dollars nor more than five hundred dollars in a suit at law for the benfit of the aggrieved person;

and further provides that a judgment in a civil case or conviction and punishment of the offender in a criminal prosecution shall be a bar to further prosecution for a violation. Although an election is not usually required between an action in tort and a criminal prosecution, this requirement under the statute, in the absence of a clear expression to that effect, does not indicate an intent of the legislature to bar equitable relief if the conditions for such relief are present and the aggrieved person waives her remedy at law. And the modern view, pronounced by the Massachusetts Supreme Court in Kenyon v. Chicopee, 70 N. E. (2d) 241, annotated in 175 A. L. R. 430, and cited in the opinion of the Ohio Court of Appeals above referred to, is that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights.

The defendant's contention that the plaintiff is not entitled to a permanent injunction is based upon a number of well settled rules of construction, the principal among which are:

1. That where a new right is created by statute and specific remedies are provided for a violation of that right, the remedies provided are exclusive;

2. That at common law the defendant as a private owner and operator of a place of public accommodation had the ab-

solute right to determine whom it would admit to its premises, and the provisions of the statute, being in derogation of that common law right, must be strictly construed in favor of the defendant.

These rules are of general but not of universal application. Whether they are to be applied in a particular case depends upon the nature of the right created and whether the remedies provided will accomplish the purpose intended. The statute creates a personal right to every citizen to fully enjoy the facilities of a place of public accommodation upon equal terms with every other citizen. It is inconceivable that the legislative purpose was that some should have the opportunity actually to enjoy the facilities of such a place but that others, equally without personal fault, should be compelled to accept from a wrongdoer money as a substitute for such opportunity.

The defendant cites numerous Ohio cases in support of its contention that the remedies provided by the statute are exclusive. A critical examination of these cases makes clear that in all of them the statutory remedy enabled the plaintiff to retain or regain whatever he was rightfully entitled to or to restore to him whatever he would lose by the wrongful acts of the defendant; therefore, the Court either expressly or impliedly based its conclusion upon the fact that the statutory remedy was adequate and the Court adhered to the rule as stated in 50 American Jurisprudence, 593, Statutes, Section 596:

"It is an established principle that if a statute creating a new right or cause of action where none existed before, also provides an **adequate** remedy for the enforcement of the right created, the remedy thus prescribed is exclusive." (Emphasis ours.)

The system of Equity Jurisprudence originated in the necessity of providing procedures and remedies which were impossible under the fixed and rigid rules of the common law. The foundation principle of equity is that there should be no right without an adequate remedy. The test of the adequacy of the remedy is whether it will enable the plaintiff to retain or acquire that to which he is lawfully entitled, such as an elective office, or, as nearly as it is' practicable, to restore to him whatever he would lose by the wrongful acts of the defendant, or its equivalent.

The agents of the defendant testified emphatically that the plaintiff would be denied admission to the park whenever she applied. It is evident that neither a recovery at law of the damages permitted by the statute, regardless of how many times the plaintiff recovers, nor convictions and punishments of the defendant in criminal prosecutions, regardless of how often

obtained and imposed, will restore to the plaintiff in this case the thing which the legislature clearly intended to give her and of which the wrongful acts of the defendant have deprived her and will continue to deprive her, namely, the right to enter the park and the opportunity to fully enjoy its facilities. The gist of the argument of the defendant is that, although the legislature clearly intended each citizen to have the opportunity to fully enjoy the facilities of a place of public accommodation, such as Coney Island Park, on equal terms with every other citizen, yet, at the same time, the legislature also intended to empower the owner or operator of such a place, by means of repeated unlawful denials of admission to the park, to deprive a particular citizen permanently of that opportunity. To sustain such an argument would confirm an absurdity and impugn the integrity of the legislature which enacted the statute. The injury to the plaintiff by the wrongful acts of the defendant is irreparable and the statutory remedy is inadequate.

Interpretations of similar statutes have been made by the Court of last resort in several States. In White v. Pasfield, 212 Ill. App. 73, an injunction was denied for the reason that injunctive relief was not proper to protect a personal right. The basis of this conclusion is contrary to modern view as expressed in Kenyon v. Chicopee, supra.

In Woolcott v. Shubert, 154 N. Y. S. 643, an injunction was denied on the ground that the remedy provided by the statute was adequate. A most recent case is Orloff v. Los Angeles Turf Club, 180 Pac. (2d) 321 (Calif. 1947), 171 A. L. R. 913 and annotation, in which the Court granted an injunction on the ground that the remedy provided by the statute is inadequate.

This court's analysis of the nature of the right intended to be granted and the purpose to be accomplished by the provisions of the statute leads to the same conclusion reached in the decision in the Orloff case, supra, and in the obiter dictum in the case of **Colbert, et al, v. Coney Island, Inc.,** First Appellate District Court of Ohio, supra.

The Court holds that a permanent injunction should be and is hereby granted restaining the defendant, Coney Island, Inc. at all times when the Coney Island Park and its facilities are open to the public generally, from denying the plaintiff, Ethel Fletcher, admission to said park and the opportunity to fully enjoy its facilities, because of her race or color, or because of her membership in the National Association for the Advancement of Colored People or in the Cincinnati Council on Human Relations, or for any other reason not applicable alike to every citizen.

Please present an entry.