Everett *v.* Harron, Appellant.

124

Argued November 10, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Max C. Baylinson,* with him *Baylinson & Lewis,* for appellants.

*James K. Baker* and *Julian E. Goldberg,* for appellees.

*Jerome J. Shestack,* First Deputy City Solicitor, with him *Richard D. Solo,* Assistant City Solicitor, *Murray L. Schwartz,* Deputy City Solicitor and *Abraham L. Freedman,* City Solicitor, for City of Philadelphia, amicus curiae.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 3, 1955:

Defendants appeal from a decree of the court below enjoining them from refusing to admit plaintiffs, and others similarly situated, to an establishment known as "Boulevard Pools" and "Boulevard Swimming and Tennis Club."

Defendants own and operate an establishment situate at Roosevelt Boulevard and Princeton Avenue in the City of Philadelphia. It covers about 7½ acres and comprises four pools of various sizes and depths for swimming and bathing, a tennis court, a basketball court, a volley-ball court, ten ping-pong tables, swings for children, a large tract of lawn for sunbathing and picnicking, a sand beach, refreshment stands where ice cream, sandwiches and soft drinks are sold, and a building with dressing and bathing facilities consisting of 7200 lockers and stalls and four large shower rooms containing individual showers.

Although not admitting that their establishment constituted "an amusement or recreation park" defendants do admit that the swimming pools were operated for "public accommodation." A single admission charge entitles a person to partake of all the privileges. Several thousand persons patronize the park on warm days during the summer season.

The court found, and indeed the defendants further admit, that the policy and practice of the establishment is to exclude negroes from the use of all facilities in the establishment. Defendants also frankly admit that a crude attempt to give the enterprise the character of a private club in order to justify a selective admission of applicants was but a device to keep negroes from the swimming pools. Plaintiffs, several of whom are negroes who were thus excluded, filed a complaint in equity seeking an injunction, which the

court ultimately granted, restraining defendants from refusing admission to their premises of plaintiffs or any others on the sole ground of race or color.

Section 654 of The Penal Code of 1939, P. L. 872, provides that "All persons within the jurisdiction of this Commonwealth shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. Whoever, being the owner, lessee, proprietor, manager, superintendent, agent or employe of any such place, directly or indirectly refuses, withholds from, or denies to, any person, any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publishes . . . any . . . notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such places shall be refused, withheld from, or denied to, any person on account of race, creed, or color, or that the patronage or custom thereat of any person belonging to, or purporting to be of, any particular race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than one hundred dollars ($100), or shall undergo imprisonment for not more than ninety (90) days, or both."

Defendants contend that their establishment does not fall within the range of this statutory enactment because the section in question goes on to provide that "A place of public accommodation, resort or amusement, within the meaning of this section shall be deemed to include" some enumerated forty-odd places but does not specifically name "swimming pools." However, this does not imply that only the places thus men-

tioned are within the purview of the statute for the list does not purport to be exclusive of all places other than those specifically named. Moreover, the enumeration does include "bath-houses" and "amusement and recreation parks," and the court properly held that defendants' establishment fell within both of those categories. Certainly the building containing the shower and locker facilities constituted a bath-house, and it is difficult to imagine how the whole enterprise could be characterized as other than "an amusement and recreation park." The exclusion of the negroes, therefore, merely because of their race or color, constitutes a violation of the act: *Commonwealth v. Figari*, 166 Pa. Superior Ct. 169, 70 A. 2d 666.

Does the statute confer upon persons against whom illegal discrimination is practiced a right of action to redress the grievance thereby suffered? The answer to this question must undoubtedly be in the affirmative. It will be noted that section 654 begins by stating that "All persons within the jurisdiction of this Commonwealth shall be entitled to the full and equal accommodations . . . of any places of public accommodation, resort or amusement, . . .". If, therefore, they are "entitled" to such privileges they are likewise entitled to enforce them, since wherever there is a right there is a remedy. Indeed, the section refers, in another connection, to "presumptive evidence in any civil or criminal action," thus indicating that civil relief was contemplated by the legislature. Nor does the fact that a criminal penalty is provided for in the enactment render such remedy exclusive or supersede the right of action for damages in a civil proceeding, it being generally held that where a statute imposes upon any person a specific duty for the benefit of others, if he neglects or refuses to perform such duty he is liable for any injury caused by such neglect or refusal

if such injury is of the kind which the statute was intended to prevent: *Stehle v. Jaeger Automatic Machine Co.*, 220 Pa. 617, 69 A. 1116; *Westervelt v. Dives*, 231 Pa. 548, 80 A. 1054; *Danner v. Wells*, 248 Pa. 105, 93 A. 871; *Boyd v. Smith*, 372 Pa. 306, 94 A. 2d 44; *Ferguson v. Gies*, 82 Mich. 358, 46 N.W. 718; *Bolden v. Grand Rapids Operating Corporation*, 239 Mich. 318, 214 N.W. 241; *Anderson v. Pantages Theater Co.*, 114 Wash. 24, 194 P. 813; Restatement, Torts, §287.

It being clear, then, that plaintiffs have a right to proceed against defendants in a civil action to recover damages, have they also a right to equitable relief by way of injunction? Defendants urge two reasons why such relief should not be granted: (1) because of the penal section attached to the statute, and (2) because no property right of plaintiffs is involved.

As to the first of these alleged barriers, it is true that it has frequently been stated that equity will not act *merely* to enjoin the commission of a crime, and that a bill in equity *having for its sole purpose* an injunction against crime does not lie: *Klein v. Livingston Club*, 177 Pa. 224, 228, 35 A. 606; *Commonwealth v. Smith*, 266 Pa. 511, 516, 109 A. 786, 788; *Diamond v. Diamond*, 372 Pa. 562, 94 A. 2d 569. This does not mean, however, that, even though there be other reasons for invoking the jurisdiction of equity, no injunctive relief can be granted if the act against which it is directed is subject to a criminal penalty. The proper statement of the rule is this,—that the mere fact that the act complained of is a crime neither confers equitable jurisdiction nor ousts it. It was said in *People ex rel. Bennett, Attorney-General v. Laman*, 277 N.Y. 368, 376, 14 N.E. 2d 439, 442: "Whether or not the act sought to be enjoined is a crime, is immaterial. Equity does not seek to enjoin it simply because it is a crime; it seeks to protect some proper interest. If

the interest sought to be protected is one of which equity will take cognizance, it will not refuse to take jurisdiction on the ground that the act which invades that interest is punishable by the penal statutes of the State." In short, while equity will not enjoin the commission of a crime in order to enforce the criminal law, the criminal nature of an act will not deprive equity of jurisdiction otherwise attaching. As a matter of fact, the cases are legion both in our own State and elsewhere where injunctive relief has been granted although the commission of an act which is subject to a criminal penalty is thereby being enjoined: *Commonwealth v. Kennedy*, 240 Pa. 214, 87 A. 605; *Ashinsky v. Levenson*, 256 Pa. 14, 100 A. 491; *Commonwealth v. Soboleski*, 303 Pa. 53, 153 A. 898; *Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883; *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20; *Neill v. Gimbel Brothers, Inc.*, 330 Pa. 213, 199 A. 178; *Palmer v. O'Hara*, 359 Pa. 213, 58 A. 2d 574; *Boggs v. Werner*, 372 Pa. 312, 94 A. 2d 50; cf. *Commonwealth ex rel. Grauman v. Continental Co. Inc.*, 275 Ky. 238, 121 S.W. 2d 49; *Commonwealth v. Anderson*, 237 S.W. 2d 860 (Ky). See also 28 Am. Jur. 336, §148. Indeed, a familiar example where such relief is commonly granted is the issuance of injunctions against picketing attended by violence,—in effect, therefore, against acts of assault and battery. In *Martin v. Baldy,* 249 Pa. 253, 94 A. 1091, it was held that, while a court of equity will not ordinarily enjoin a criminal proceeding against an individual, it will assume jurisdiction where a multiplicity of suits may be prevented or where a fundamental question of legal right is involved. In the present case there *is* such a likelihood of a multiplicity of suits because the barring of each and every negro from the pools, and each and every time that he is so barred, will potentially give rise to an action against defendants for damages.

The second objection raised by defendants to the jurisdiction of equity is based upon the oft-repeated statement that equity will not act unless a property right is involved. This maxim apparently stems from a dictum of Lord Eldon made nearly a century and a half ago in *Gee v. Pritchard,* 2 Swans. 403, 36 Eng. Rep. (Ch.) 670, and it has been enunciated in our own State in some cases: *Kearns v. Howley,* 188 Pa. 116, 41 A. 273; *Ashinsky v. Levenson,* 256 Pa. 14, 19, 100 A. 491, 493; *Hutchinson v. Goshorn,* 256 Pa. 69, 100 A. 586; *Kenneck v. Pennock,* 305 Pa. 288, 157 A. 613; *Harding v. Pinchot,* 306 Pa. 139, 159 A. 16; *Heasley v. Operative Plasterers & Cement Finishers International Association, Local No. 31,* 324 Pa. 257, 188 A. 206; *Diamond v. Diamond,* 372 Pa. 562, 94 A. 2d 569. But it is a generalization "more honoured in the breach than the observance," and runs counter to the cardinal need of flexibility in the domain of equity jurisprudence. Blackstone, after quoting Grotius' definition that equity is "the correction of that wherein the law (by reason of its universality) is deficient," stated (Book 1, *62) that "Equity thus depending, essentially, upon the particular circumstances of each individual case, there can be no established rules and fixed precepts of equity laid down, without destroying its very essence, and reducing it to a positive law." The categorical statement that equity will grant relief only if a property right is involved has been frequently criticized in legal periodicals and the authorities are overwhelmingly opposed to it. In 28 Am. Jur. p. 266, §71, it is said: ". . . there have always been some clearly defined exceptions to the general rule, and there is a progressive tendency on the part of the courts to remedy by injunction injuries to personal rights. This is, perhaps, as it should be, because the personal rights of citizens are more sacred and, by every test, of more

value than things that may be measured by a purely monetary standard, and the courts have expressed difficulty in understanding why injunctive protection of the one class of rights should be placed above similar protection of the other."

In *Kenyon v. City of Chicopee*, 320 Mass. 528, 70 N.E. 2d 241, the court said (pp. 533, 534, N.E. pp. 244, 245) : "In reading the decisions holding or stating that equity will protect only property rights, one is struck by the absence of any convincing reasons for such a sweeping generalization.  We are by no means satisfied that property rights and personal rights are always as distinct and readily separable as much of the public discussion in recent years would have them. But in so far as the distinction exists we cannot believe that personal rights recognized by law are in general less important to the individual or less vital to society or less worthy of protection by the peculiar remedies equity can afford than are property rights. . . . We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights by injunction.  In general, these conditions are, that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute."  The court then cited a very large number of States which "have tended toward this view" and also a large number of legal writers who "support it."

In *Orloff v. Los Angeles Turf Club*, 30 Cal. 2d 110, 180 P. 2d 321, the court said (p. 117, P. p. 325) : "On principle it is difficult to find any sound reason for the enunciation of a broad principle that equity will

not protect personal rights. . . . The issue should not in logic or justice turn upon the sole proposition that a personal rather than a property right is involved. To so reason, is to place property rights in a more favorable position than personal rights, a doctrine wholly at odds with the fundamental principles of democracy. These concepts of the sanctity of personal rights are specifically protected by the Constitutions, both state and federal, and the courts have properly given them a place of high dignity, and worthy of especial protection."

In *Vanderbilt v. Mitchell,* 72 N.J. Eq. 910, 67 A. 97, the Court said (p. 919, A. p. 100) : "If it appeared in this case that only the complainant's status and personal rights were thus threatened or thus invaded by the action of the defendants and by the filing of the false certificate, we should hold, and without hesitation, that an individual has rights, other than property rights, which he can enforce in a court of equity and which a court of equity will enforce against invasion, and we should declare that the complainant was entitled to relief, . . .".

Among other cases to this same effect may be cited *Berrien v. Pollitzer,* 165 F. 2d 21; *Ashley v. Board of Education,* 275 Ill. 274, 114 N.E. 20, where a Board of Education was enjoined from excluding a number of orphan children from the public schools; and, more particularly, the recent cause celebre, *Brown v. Board of Education,* 347 U.S. 483, where the defendants were enjoined from segregating negro children in the public schools and where the contention that no property right was involved (as of course it was not) was not even raised. In our own State injunctive relief was granted in *Annenberg v. Roberts,* 333 Pa. 203, 2 A. 2d 612, although there was no claim of any property right. In *Clayman v. Bernstein,* 38 D. & C. 543, 549, 550,

where an injunction was sought to prevent a physician from taking photographs of a patient showing facial disfigurement resulting from her illness, the court said: "The final argument of defendant is that equity will not take jurisdiction where property rights are not involved. This contention cannot be seriously considered, although since the dictum in the case of Gee v. Pritchard et al., . . . it has become firmly established as a general rule in the courts of equity. Precedent for jurisdiction is abundant: . . . . . . . the history and development of the court of chancery both in England and in this Commonwealth militates against the existence of a wrong without an adequate remedy. Unless equity affords relief under circumstances such as this plaintiffs are in a most lamentable situation. Monetary damages can never be adequate compensation. . . . The powers of equity are not so impotent that such a situation will be tolerated. The remedy afforded must be such as to destroy the roots of the evil and this can only be done by mandatory injunction."

In conclusion it should be pointed out that cases involving the banning of negroes from public swimming pools have been met and disposed of in federal jurisdictions, and in every such instance an injunction has been granted: *Valle v. Stengel*, (U.S.C.A. 3d) 176 F. 2d 697; *Lopez v. Seccombe*, (Dist. Ct. S.D. Cal.) 71 F. Supp. 769; *Lawrence v. Hancock*, (Dist. Ct. S.D. W.Va.) 76 F. Supp. 1004; *Law v. Mayor and City Council of Baltimore*, (Dist. Ct. Md.) 78 F. Supp. 346; *Draper v. City of St. Louis*, (Dist. Ct. E.D. Mo.) 92 F. Supp. 546; *Williams v. Kansas City, Mo.*, (Dist. Ct. W.D. Mo.) 104 F. Supp. 848; also *Fletcher v. Coney Island Inc.* (C.P. Ct., Hamilton County, Ohio), 121 N.E. 2d 574.

Decree affirmed at defendants' costs.