Butler County Mushroom Farm and Roy Lucas, Supervisor, Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued June 5, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Harley N. Trice, II, Reed, Smith, Shaw* & *Mc-Clay,* for petitioners.

*Dennis W. Strain,* Assistant Attorney General, for respondent.

OPINION BY JUDGE ROGERS, July 24, 1981:

Butler County Mushroom Farms, Inc. (Butler)[1] is engaged in the business of growing mushrooms in mined-out limestone mines at two locations, one in Butler and the other in Armstrong County. It employs about 950 people. All hourly employees who work underground are and have been required to record their presence on a time clock and it is agreed by the parties that this is a satisfactory means of keeping records of who and how many of such employees are in the mine at any time. Prior to the events giving rise to this litigation, the employer had no system for determining who or how many salaried employees or others aside from hourly employees were in the mines.

---

[1] Roy Lucas, a Butler supervisor, has been a nominal party throughout these proceedings because he, as well as his employer, was named as the subject of the order which is the subject of this appeal. References to Butler herein shall be read to include Lucas.

It is also noted that Butler filed what it calls a precautionary appeal from DER's action approving its plan for a "check system" which it filed for approval. We can understand this appeal as a means of demonstrating Butler's continued opposition to DER's order to provide a "check system" as without statutory basis but we are not clear as to its purpose otherwise. EHB properly dismissed this appeal and we will affirm its order of June 23, 1980, in this respect.

The matter of the absence of a system which would make the names of everyone in the mines at any time accessible to persons on the surface seems to have been a matter of concern to the Director of the Office of Deep Mine Safety, Department of Environmental Resources (DER), for some time; and on October 20, 1978, DER over the signature of the Director issued a directive, which it called an order, that Butler implement a "check system" at its facilities, in addition to the time clock system for hourly employees, so that the identity of all persons underground other than those using the time clocks should be recorded. Recited as authority for the order was the "General Safety Act", Act of May 18, 1937, P.L. 564, *as amended*, 43 P.S. §25-1; certain DER regulations;[2] and Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §510-17.

Butler appealed the order of October 20, 1978, to the Environmental Hearing Board (EHB) and after being refused a supersedeas filed the plan required by the order. The plan was approved by DER and Butler filed a precautionary appeal from the action of approval. It also implemented the system in accordance with the approved plan subject to a self-proclaimed assertion that its act of compliance should not affect its right to pursue its challenge to the order.

Butler asserted and still asserts that the "General Safety Act" confers no authority upon DER or any officer of DER to issue administrative orders in its enforcement, so that the order is a nullity; and that Section 1917-A of the Administrative Code conferring on DER the power to order nuisances to be abated was

---

[2] The regulations cited as authority for the order incontestibly applied to activities other than those carried on by Butler, are not urged by DER as authority on this appeal and need no further mention herein.

not a proper basis for the order because the absence of a "check system" for persons other than hourly employees did not constitute a public nuisance.

The case therefore presents the question of whether the "General Safety Act" gives DER the power to issue administrative orders in the enforcement. The enforcement provisions are the following:

13. Enforcement; right of entry

The provisions of this act shall be enforced by the Department of [Environmental Resources].[3] For the purpose of enforcing the provisions of this act, the Secretary of [the Department of Environmental Resources], or his duly authorized representative, shall have the power to enter any room, building, or place where labor is employed, and to issue the necessary instructions to the superintendent, manager, or responsible agent of the employer, to correct violations of this act or regulations based on this act.

14. Procedure in prosecution

Prosecution for violation of the provisions of this act or the rules and regulations of the department authorized by this act may be instituted by an authorized agent of the department.

15. Penalties

Any person who shall violate any of the provisions of this act or the rules and regulations of the department as herein provided for, or who shall hinder or delay or interfere with any person charged with the enforcement of

---

[3] The administration of the provisions of the "General Safety Act" relating to mines was transferred from the Department of Labor and Industry to DER by Reorganization Plan No. 2 of 1975, 71 P.S. §756-2.

this act in the performance of his duty, shall, upon conviction in a summary proceeding, be sentenced for a first offense to pay a fine of not less than twenty-five dollars and not more than one hundred dollars, and in default of the payment of such fine and costs, shall be imprisoned for a term of not more than thirty days, and, upon conviction for a second offense, shall be sentenced to pay a fine of not less than fifty or more than two hundred dollars, and in default of the payment of such fine and costs, shall be imprisoned for a term not exceeding sixty days. Any person guilty of a third offense, under the provisions of this act, shall be guilty of a misdemeanor, and upon conviction, shall be sentenced to pay a fine of not more than five hundred dollars, or to undergo imprisonment not exceeding six months, or both, at the discretion of the court. Each violation shall be deemed to constitute a separate offense.

The EHB after hearing concluded that Section 13 of the "General Safety Law", 43 P.S. §25-13, granted DER power to issue administrative orders requiring compliance with the Act and that the order that a "check system" be instituted was appropriate as a means of requiring Butler to comply with Section 2(f) of the Act, 43 P.S. §25-2(f), providing that mines be operated and conducted so as to provide protection to workers. The EHB expressly declined, as unnecessary, to consider or decide whether the order was a proper exercise of the DER's authority to order the abatement of nuisances under Section 1917-A of the Administrative Code.

Section 13 of the "General Safety Act" provides that the Act shall be enforced by the DER and for that purpose the Secretary or his representatives may enter work places and issue instructions to employers

to correct violations of the Act and regulations. The EHB found in this a sufficient grant to DER of power to issue administrative orders, declaring that the word "instructions" should be read as "orders" because if it were not there would be no enforcement under Section 13. We find these conclusions lacking in lexicological and ratiocinative force. "The power and authority to be exercised by administrative [agencies] must be conferred by legislative language clear and unmistakable [and a] doubtful power does not exist." *Green v. Milk Control Commission*, 340 Pa. 1, 3, 16 A.2d 9 (1940). That the Legislature meant, when it said in Section 13 of the "General Safety Act" that DER personnel could enter work places and issue instructions for the correction of violations, that DER may issue administrative orders, is not clear and unmistakable to us. The primary meaning of "instruction" is something which instructs. Further, the word "order" is commonly employed in legislation conferring powers on administrative agencies. In view of the fact that the word "order" appears nowhere in the "General Safety Act", we are constrained to interpret Section 13 read in its entirety, including the heading, "Enforcement; right of entry", as intending to confer on DER personnel the power to enter work places and, having done so and observed violations, to give corrective instructions. We are further encouraged in this reading of Section 13 by the fact that the General Assembly in enacting the "Clean Streams Law", Act of June 22, 1937, P.L. 1987, 35 P.S. §691.1, just a month after the adoption of the "General Safety Act", authorized the Sanitary Water Board to issue *orders* for the discontinuance of polluting discharges, made it a criminal offense to violate such *orders* and declared violations of *orders* to be nuisances abatable in equity. The same express authority to issue orders enforceable in a variety of ways, criminally and civilly, is given to

the agencies charged with the administration of the Pennsylvania Solid Waste Management Act, Act of July 31, 1978, P.L. 788, *as amended*, 35 P.S. §6001 *et seq*, and the Air Pollution Control Act, Act of January 8, 1960, *as amended*, P.L. (1959) 2119, 35 P.S. §4001.

Not only is there no clear and unmistakable authority to issue administrative compliance orders conferred on DER by the "General Safety Act", there is not in that Act a hint of power given DER to enforce anything other than the provisions of the Act and regulations. The almost contemporaneous "Clean Streams Law", as noted, provided that administrative orders may be enforced criminally and in equity as nuisances. Since the "General Safety Act" does not authorize DER to prosecute under Section 14 or bring criminal charges pursuant to Section 15 except for violations of the Act or regulations, it is clear and unmistakable that no power to enforce an administrative order exists — and this fact further demonstrates that the Legislature did not mean to authorize orders under the name instructions.

Section 2(f) of the "General Safety Act" to which we have earlier made several references provides:

> All ... mines other than coal mines ... shall be properly shored, braced, and otherwise guarded, operated, and conducted as to provide reasonable and adequate protection to workers employed therein.

It was this provision which EHB found on the evidence it heard to have been violated by the absence of a "check system". EHB seems then to have concluded that DER needed the power to issue orders compelling compliance because the rather mild criminal penalties of Section 15 were inadequate. Section 14 of the Act may have been overlooked. This section authorizes prosecutions for violations of the Act and regulations; and prosecutions for violations may, of

course, be pursued civilly as well as criminally. Proceeding in equity for injunctive relief comes readily to mind. The fact that the conduct complained of may also be a criminal offense neither confers equitable jurisdiction, nor ousts it. While equity will not enjoin the commission of a crime in order to enforce the criminal law, the criminal nature of an act will not deprive equity of jurisdiction otherwise attaching. *See Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955). Here, jurisdiction might be found because the fundamental question of the legal right of workers to a safe place to work may be involved.

We therefore agree with Butler that the "General Safety Act" does not empower DER to issue administrative orders in its enforcement.

Butler makes two other points, which we will mention briefly. First, it contended below and still urges that its establishments are farms, exempted from the reach of the "General Safety Act" by Section 1, 43 P.S. §25-1. Mushrooms are grown in wooden trays in which compost, casing soil and mushroom spawn are blended. Proper growth of the mushrooms requires special conditions of temperature and light and mushrooms are not grown on land out of doors but traditionally in mushroom houses and more recently in caves and mined-out areas where the conditions of temperature and light are suitable and stable, or can be made so. The process is not different from that of cultivating flowers in greenhouses. In neither case is the activity conducted on a farm. Butler also contends that there can be no violation of the "General Safety Act" unless a regulation describes the particular action the omission or commission of which is asserted to be a violation; in other words that the Act itself is not self-executing. It cites as authority for this proposition portions of a charge of a judge to the jury appearing in the opinion of the Supreme Court in *Matulonis v.*

*Reading Railroad Co.*, 421 Pa. 230, 219 A.2d 301 (1966). *Matulonis* was a personal injury suit in which the plaintiff unsuccessfully sought to induce the trial judge to charge the jury that the owner of his work place was in violation of the "General Safety Act" in having failed to provide proper lighting and toe boards at the edge of the platform from which he fell. The trial judge took the position that the "General Safety Act" is not self-executing and that the plaintiff was required to, but did not, prove that the Department of Labor and Industry had promulgated rules and regulations about the conditions complained of. The Supreme Court in affirming a defendant's verdict commented on this aspect of the case that it found no clear abuse or error of law and that the charge "viewed in its entirety" correctly submitted the issues to the jury. The Supreme Court further commented that the outcome of the case unfavorable to the plaintiff was more likely the result of telling attacks on his credibility. The Supreme Court's opinion suggests to us that its action affirming the judgment, viewed in its entirety, was also the result of things in the record shedding doubt on the plaintiff's credibility. In any event, the instant matter is not that of whether a jury should be instructed that a defendant's conduct in some particular not specifically addressed by a regulation constituted a violation of the "General Safety Act", and hence negligence. Rather, the question here is that of whether the safe use of a mine for growing mushrooms necessitates the installation of a system of recording the presence of all people in the mine, and we do not believe that a regulation on this (and every other of the endless number of conditions which might be hazardous) is required for enforcement of the Act. Indeed, if none of the provisions of the Act are self-executing, the allowances by Sections 14 and 15 of prosecutions for violations of the Act become dead letters, surely a result not intended by the Legislature.

Having concluded that DER had no authority to issue an order derived from the "General Safety Act", we reverse the EHB's order with respect to Butler's appeal from the DER order of October 20, 1978; but we remand the record to EHB for decision on the record of whether that order was authorized under Section 1917-A of the Administrative Code. EHB's order dismissing Butler's appeal from the approval of its plan for a "check system" is affirmed.

ORDER

AND Now, this 24th day of July, 1981, the order of the Environmental Hearing Board made June 23, 1980, as it relates to the Department of Environmental Resources order of October 20, 1978, is reversed; and the record is remanded to the Environmental Hearing Board for proceedings with respect to said order of October 20, 1978, consistent with the opinion herein. The Environmental Hearing Board's order insofar as it dismisses Butler's appeal from the Department's action approving the plan for a "check system" is affirmed.