373 F.2d 771
 COMMONWEALTH OF PENNSYLVANIA, Attorney General of the
Commonwealth of Pennsylvania, City of Philadelphia and Alan
Levi Bond, by His Mother, Mrs. Ruby Bond, Charles William
Hicks and Theodore Lewis Hicks, by Their Mother, Mrs. Marie
Hicks, James Scruggs and Henry Scruggs, by Their Mother,
Mrs. Ardella Scruggs, Tyrone Karl White and Terry Sherwood
White, by Their Mother, Mrs. Charlotte L. White, on Behalf
of Themselves and All Others Similarly Situated
v.
Revelle W. BROWN et al., Trustees of the Estate of Stephen
Girard, Appellants.
 No. 16256.
 United States Court of Appeals Third Circuit.
 Argued Dec. 20, 1966.
Decided Feb. 28, 1967.
 
 Ernest R. von Starck, Philadelphia, Pa. (Gaffney & Gaffney, Philadelphia, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., Arthur Littleton, John Russell, Jr., Richard P. Brown, Jr., Philadelphia, Pa., on the brief), for appellants.
 Charles J. Biddle, Jr., Philadelphia, Pa., continuing William T. Coleman, Jr., Philadelphia, Pa. (Drinker, Biddle & Reath, J. Alan Kugle, Henry S. Hilles, Jr., Dilworth, Paxson, Kalish, Kohn & Levy, Robert W. Maris, Philadelphia, Pa., on the brief), for appellees.
 Before STALEY, Chief Jduge, and McLAUGHLIN, KALODNER, SMITH and SEITZ, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 The defendants, Trustees of the Estate of Stephen Girard,[1] refused to admit the seven minor plaintiffs, Negro male orphans, to Girard College, a charitable educational establishment created under the Will of Stephen Girard, on the sole ground that Girard's Will expressly restricts admission to the College to 'poor male white' orphans.
 
 
 2
 The guardians of the minor plaintiffs, the Commonwealth of Pennsylvania and its Attorney General, and the City of Philadelphia, filed a complaint in the District Court praying for an injunction restraining the defendants from denying the minor plaintiffs, and others similarly situated, admission to the College simply because they are Negroes.
 
 
 3
 The complaint consists of there counts. Count I charges in sum that Girard College 'is so impressed with state involvement and state action' that its acts must be imputed to the state itself, and thus the denial of admission to the College on racial grounds violates the Fourteenth Amendment; Count II seeks application by the District Court of the cy pres doctrine to benefit all poor male orphans, irrespective of race or color, in accordance with Girard's alleged testamentary intent to benefit the City of Philadelphia and its citizens; Count III alleges that denial of admission to the seven minor plaintiffs solely because they are Negroes violates the Pennsylvania Public Accommodations Act, 18 P.S. 4654.
 
 
 4
 The defendants moved to dismiss the complaint on these grounds: (1) the District Court lacked jurisdiction over the subject matter; (2) the issues were res adjudicata by reason of prior related proceedings in the state courts; (3) the complaint failed to state a claim upon which relief could be granted; and (4) the Commonwealth of Pennsylvania, its Attorney General, and they City of Philadelphia lacked the requisite standing or capacity to bring the action.
 
 
 5
 The District Court in its opinion, reported at 260 F.Supp. 323 (E.D.Pa.1966), held that it had jurisdiction with respect to all three counts of the complaint. It based its jurisdiction as to Count I under 28 U.S.C.A. 1343(3) and 42 U.S.C.A. 1983, because 'the complaint sufficiently raises substantial questions of whether the defendants are, 'under color of' state authority, depriving the individual plaintiffs of their right to the equal protection of the laws'.[2] It further ruled that it had pendent jurisdiction as to Counts II and III, because 'the three counts of the complaint constitute a single 'case' for a single trial * * * the proof required on the several counts is overlapping, the constitutional issues are at least as significant as the state law questions, and the relief sought is unitary and identical'.[3]
 
 
 6
 The District Court made this further specific deposition with respect to the defendants' motion to dismiss:
 
 
 7
 It denied the motion insofar as it related to Counts I and II 'without prejudice to the rights of the defendants to renew it at the appropriate time'; it denied the motion as to Count III 'insofar as the seven individuals are parties-plaintiff', and granted it as to Count III 'insofar as the Commonwealth of Pennsylvania, the Attorney General of Pennsylvania, and the City of Philadelphia are parties-plaintiffs',[4] on the ground that they 'are precluded by res judicata from claiming that Girard College is violating the Pennsylvania Public Accommodations Act'.[5]
 
 
 8
 The District Court further ruled that 'decision on the merits of counts one and two will be deferred' (260 F.Supp. 357), stating that, 'So far as count one is concerned, the issues of nonobvious state involvement are probably the kind that courts are rightly reluctant to decide on a motion to dismiss anyway * * * (and) They require concrete development to evaluate properly by the process of 'sifting facts and weighing circumstances'. Burton v. Wilmington Parking Auth., 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)'.[6]
 
 
 9
 After this disposition 'of the liminal questions of jurisdiction and standing', the District Court held that the question presented by Count III of the applicability of the Pennsylvania Public Accommodations Act ('Act') was one of first impression, since 'The issue was not decided by the Pennsylvania courts in any of the former proceedings',[7] which had challenged the exclusion of Negro male orphans from Girard College for the assigned reason that the Will of Stephen Girard, the creator of the College, limited admission to the institution to 'poor male white orphans'. It further held, after extended discussion of the Act, which makes it a misdemeanor to practice racial discrimination in places of public accommodation and educational institutions generally, except where they are 'in * * * their nature distinctly private',[8] that 'This statute forbids discrimination in schools such as Girard', and, 'Accordingly, if the individual plaintiffs can prove count three of their complaint, continued racial discrimination in the selection of students for admission to Girard College will be enjoined'.[9]
 
 
 10
 Having thus ruled, the District Court granted leave to the defendants to answer the complaint within 30 days of the filing of its opinion on September 2, 1966. The answer was filed on September 21, 1966. Prior thereto, the individual plaintiffs, on September 16, 1966, filed a motion for an early hearing at which evidence could be adduced as to any disputed factual issues with respect to Count III, and for a preliminary injunction 'enjoining defendants from discriminating against plaintiffs and all others similarly situated in admission to Girard College on the basis of race'.
 
 
 11
 Hearing was had on the motion for a preliminary injunction on October 3, 1966.[10] Evidence was then adduced bearing on Count III. Upon counsel's advice that no additional evidence on that Count would be offered on final hearing, the District Court ordered, without objection by counsel, that the preliminary hearing be treated as on final hearing.
 
 
 12
 In an Adjudication filed November 2, 1966, reported at 260 F.Supp. 358, the District Court ruled that Girard College 'is covered' by the Pennsylvania Public Accommodations Act;[11] that 'Said Act prohibits defendants from refusing plaintiffs admission to Girard College on the ground that they are not white, if they are otherwise qualified'; and that the minor plaintiffs 'are entitled to a permanent and final injunction', which would give effect to its holding.[12]
 
 
 13
 The District Court specifically stated in its 'Discussion' of its disposition that 'This adjudication, of course, reaches and disposes of finally only count three of the complaint. * * * We believed that a single trial would have disposed of the common issues of fact involved in all counts of the complaint. However, plaintiffs' insistence upon proceeding preliminarily (as it turned out, finally) on count three has made this an impossibility'.[13]
 
 
 14
 In the Decree accompanying the Adjudication, the District Court stated in part in Paragraph 1: 'Defendants are permanently enjoined from denying to minor plaintiffs admission to Girard College on the sole ground that they are not white, provided that they are otherwise qualified for admission'. Paragraph 4 of the Decree provided that 'Plaintiffs may institute an action in the Orphans' Court of the County of Philadelphia, in order that the courts of the Commonwealth of Pennsylvania may have due opportunity to decide promptly and expeditiously all issues involved in count two of the plaintiffs' complaint (the cy pres count)'. In Paragraph 5 of the Decree the District Court stated that it 'will retain jurisdiction over all allegations of the complaint, pending a final determination of plaintiffs' right to the relief granted * * *.'[14]
 
 
 15
 The defendants appealed. In their brief they state the issues presented to be as follows:
 
 
 16
 1. Did the District Court err in holding that a substantial federal question was presented in Count I? 2. Did the District Court err in holding that it had pendent jurisdiction over Counts II and III and cy pres jurisdiction over Count II? 3. Did the District Court err in refusing to abstain from deciding Count III and in retaining jurisdiction over Count II after abstaining from deciding it? 4. Did the District Court err in holding that the orphanage is a place of public accommodation within the meaning of the state Public Accommodations Act?
 
 
 17
 This must immediately be said with respect to the stated issues.
 
 
 18
 As earlier established, the District Court specifically said that 'this adjudication, of course, reaches and disposes of finally only count three of the complaint'.
 
 
 19
 In paragraph 3 of its Decree it stated 'The court determines expressly that there is no just reason for delay and expressly directs the entry of final judgment for plaintiffs and against defendants on count three of the complaint'. 260 F.Supp. 367. This disposition, made in accordance with the provisions of Rule 54(b) F.R.Civ.P., made the judgment as to Count III 'a final decision' required by 28 U.S.C.A. 1291.
 
 
 20
 Rule 54(b) permits entry of a final judgment as to one or more of multiple claims when 'there is no just reason for delay and upon an express direction for the entry of judgment'.
 
 
 21
 The complaint here asserts multiple claims, since the violations charged in its three counts are factually 'separate and independent'.[15] Count I charges that the defendants' denial of admission to Girard College is in substance in the exercise of State authority, viz., 'under color of' State authority; Count III charges violation by individuals of the Pennsylvania Public Accommodations Act, independent of the 'color of' State authority; Count II merely asserts a basis for the application of the cy pres doctrine.
 
 
 22
 The District Court's holding that it had jurisdiction as to Count I under the federal statutes earlier cited, and pendent jurisdiction as to Count II, and its retention of jurisdiction with respect to these counts, do not achieve the proportions of 'a final decision' within Section 1291 so as to make them appealable.
 
 
 23
 Moreover, with respect to the denial of the motions to dismiss Counts I and II, it is settled that 'denial of a motion to dismiss, even when the motion is based on jurisdictional grounds, is not immediately reviewable'. Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945).
 
 
 24
 The sum of the foregoing is that the sole appealable action of the District Court is its judgment, premised exclusively on Count III, and that our review here is limited to determining whether the District Court erred in entering that judgment.
 
 
 25
 The threshold question presented is whether the District Court erred in ruling that 'the issue' of the 'applicability' of the Pennsylvania Public Accommodations Act 'was not decided by the Pennsylvania courts in any of the former proceedings',[16] which had challenged the exclusion of Negro male orphans from Girard College, and that consequently the issue was one of first impression which it was free to resolve ab initio.
 
 
 26
 It arises by reason of the fact that having so decided, the District Court proceeded (1) to construe the Pennsylvania Act as prohibiting the exclusion referred to; (2) to find that the defendants had violated that prohibition; and (3) to enjoin the defendants from denying the minor plaintiffs admission to Girard College.
 
 
 27
 We direct our attention to the stated threshold question because a determination that the District Court erred in its view that the Pennsylvania courts had 'not decided' the applicability of the Public Accommodations Act 'in the former proceedings' would make unnecessary discussion and resolution of the District Court's construction of the Act.
 
 
 28
 It must be noted that the District Court correctly stated in its opinion at 260 F.Supp. 323, 339 that 'Had the applicability of the act to Girard College been settled in the prior proceedings * * * we would be bound to adhere to the Pennsylvania courts' interpretation of the statute. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)'.
 
 
 29
 In Beilan v. Board of Public Education, 357 U.S. 399, 404, 78 S.Ct. 1317, 1321, 2 L.Ed.2d 1414 (1958), it was specifically held: 'We are bound by the interpretation thus given to the Pennsylvania statutes by the Supreme Court of Pennsylvania'. Again, in Barsky v. Board of Regents, 347 U.S. 442, 448, 74 S.Ct. 650, 98 L.Ed. 829 (1954), it was held that the interpretation of a new York statute by the Court of Appeals of New York 'is conclusive here'. This Court in McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493, 496 (1943), in a non-diversity case, held that the Pennsylvania Supreme Court's construction of a Pennsylvania statute is 'binding upon us in determining rights accruing under Pennsylvania Law'.
 
 
 30
 It is settled too, that matters pertinent to an issue before a court and which were clearly presented to it, by brief or appendix thereto, are to be taken as covered by the court's decision though not mentioned in the opinion. Bingham v. United States, 296 U.S. 211, 218-219, 56 S.Ct. 180, 80 L.Ed. 160 (1935); Seward v. Heinze, 262 F.2d 42, 44 (9 Cir. 1958).
 
 
 31
 It has been specifically held that where a state statute is referred to and discussed in briefs, its consideration by the court must be assumed, although it 'was not referred to in the court's opinion.' Dostal v. Magee, 273 Wis. 228, 77 N.W.2d 604, 606-607 (1956).
 
 
 32
 In Irving Nat. Bank v. Law, 10 F.2d 721, 722 (2 Cir. 1926), where Judge Learned Hand spoke for the Court, it was held that construction of a statute assumed sub silentio in an opinion by a state court of last resort, is conclusive on a federal court.
 
 
 33
 In Steel & Tubes, Inc. v. Clayton Mark & Co., 21 F.Supp. 326 (D.C.Del.1937), it was held that where the sufficiency and propriety of a patent disclaimer under a statute had been before the court, and its opinion upheld the validity of the disclaimer without reference to the questions of sufficiency and propriety of the disclaimer, 'The legal inference is that it passed upon them'.
 
 
 34
 To the foregoing must be added the settled principle that where the applicable rule of decision is the state law, it is the duty of the federal court to ascertain and apply that law, even though it has not been expounded by the highest court of the state. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940). It was there said at pages 177-178, 61 S.Ct. at page 178:
 
 
 35
 'The highest state court is the final authority on state law, (citing cases) but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. (citing cases). An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. * * * 'Here, the question was as to the construction and effect of a state statute. The federal court was not at liberty to undertake the determination of that question on its own reasoning independent of the construction and effect which the State itself accorded to its statute. That construction and effect are shown by the judicial action through which the State interprets and applies its legislation. That judicial action in this instance has been taken by the Chancery Court of New Jersey and we have no other evidence of the state law in this relation. * * * We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, (citing cases) and we think that the decisions of the Court of Chancery are entitled to like respect as announcing the law of the State.'
 
 
 36
 In Brown v. Moore, 247 F.2d 711, (1957), we applied the doctrine stated, saying at page 721:
 
 
 37
 'It is the duty of the federal courts where, as here, the State law supplies a rule of decision to ascertain and apply that law 'even though it has not been expounded by the highest court of the State, (citing Fidelity Union) Trust Co. v. Field, supra)'.'
 
 
 38
 Applicable to our consideration here is the further rule that a federal court may take judicial notice of matters of record in state courts within its jurisdiction. Berkowitz v. Philadelphia Chewing Gum Corporation,303 F.2d 585, 587 (3 Cir. 1962). Some of the briefs filed by the appellants in the former proceedings before the Pennsylvania Supreme Court have been made part of the record in the instant case in 'Court's Exhibit 'A". We have taken judicial notice of other briefs filed by the parties in the Supreme Court cases, as well as the pleadings and briefs in the various Orphans' Court proceedings which led to the appeals to the Pennsylvania Supreme Court.
 
 
 39
 The principles above stated will guide us in our consideration and disposition of the question as to whether the Pennsylvania Supreme Court and/or the Orphans' Court of Philadelphia 'decided' the issue of applicability or non-applicability of the Pennsylvania Public Accommodations Act to the denial of admission to Girard College of Negro male orphans in the former proceedings in the state courts, where the denial was challenged.
 
 
 40
 We come now to the earlier proceedings.
 
 
 41
 Their consideration must be prefaced by this statement of the background of those proceedings.
 
 
 42
 Stephen Girard died in 1831. In his Will,[17] he left a portion of his estate in trust for the erection, maintenance, and operation of a 'College'. The Will provided that the College was to admit 'as many poor white male orphans, between the ages of 6 and 10 years, as the said income shall be adequate to maintain'.[18] The City of Philadelphia was named as Trustee.
 
 
 43
 The City accepted the Trust, and the institution was opened in 1848. Later, by virtue of an Act of the Pennsylvania General Assembly (Act of June 30, 1869, P.L. 1276 1, 53 P.S. 16365),[19] the trust's administration and the operation of the College were transferred from the City of Philadelphia to the 'Board of Directors of City Trusts of the City of Philadelphia'.
 
 
 44
 From the institution's opening to the present day, Stephen Girard's testamentary direction restricting admission to the College to 'white male orphans' has been strictly adhered to. This restriction was first challenged in September 1954 when two Negro boys, William Ashe Foust and Robert Felder,[20] whose applications for admission to Girard College had been rejected because they were not white, joined in a Petition for Citation in the Orphans' Court of Philadelphia County, for orders directing 'the City of Philadelphia, acting by the Board of Directors of City Trusts, to show cause why petitioner should not be admitted to Girard College without discrimination as to race or color'. Foust and Relder subsequently filed separate petitions for Citation.
 
 The petitions alleged in paragraph 8 that:
 
 45
 'The rejection by the Board of Directors of City Trusts of your petitioner for admission to Girard College solely because of his race or color violates the 14th Amendment of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania and the statutes of our Commonwealth, and is contrary to the public policy of the City, State and Nation.'
 
 
 46
 The Commonwealth of Pennsylvania and the City of Philadelphia which intervened in the litigation in the Orphans' Court filed similar petitions.
 
 
 47
 In paragraph 8 of the Commonwealth's petition it was alleged:
 
 
 48
 'The Constitution and laws of the United States and the Constitution and laws of the Commonwealth of Pennsylvania prohibit the City of Philadelphia from administering a segregated school'.
 
 
 49
 The City of Philadelphia in its intervening petition alleged in paragraph 7 that:
 
 
 50
 'Denial of admission to Girard College to otherwise qualified male orphan children because of their race or color is contrary to the public policy of the City of Philadelphia, the Commonwealth of Pennsylvania and the United States of America'.
 
 
 51
 These allegations did not go unanswered by the Board of City Trusts. In the 8th paragraph of each of its two answers filed in reply to the petitions of the two applicants, it was stated:
 
 
 52
 'Respondent denies, as aforesaid, that the rejection of the petitioner for admission into Girard College, he not being white, was solely because of his race or color. Upon advice of counsel, Respondent denies petitioner's rejection being based specifically and solely, as above set forth, upon the fact that he did not meet all of the requirements specified in the Will of Stephen Girard, deceased, viz., that he be a poor, white, male orphan between the ages of six and ten years, violates the 14th Amendment of the United States Constitution, or the Constitution of the Commonwealth of Pennsylvania, or the statutes of our Commonwealth, or that it is contrary to the public policy of the City, State and Nation. On the contrary Respondent avers that the 14th Amendment of the Constitution of the United States is not in anywise involved in this proceeding. The sole issue here is whether The City of Philadelphia, Trustee under the Will of Stephen Girard, deceased, shall continue to execute the trusts, which it accepted, in the manner prescribed in said Will. Said execution being in complete accord with the Constitutions of the United States and the Commonwealth of Pennsylvania, the Statutes of Pennsylvania, and as well as the public policy of the City, State and Nation.'
 
 
 53
 In dismissing the various petitions, Orphans' Court Judge Bolger in his opinion, Girard Estate, 4 Pa.Dist. & Co.R.2d 671 (1965), specifically ruled on the asserted violation of Pennsylvania statutory law. At pages 702-703 of his Opinion Judge Bolger said:
 
 
 54
 'It has also been decided herein that the operation of the College in accordance with the language of the will does not offend the Constitution of the United States, any Acts of Assembly or any decisional law. * * * The chancellor having construed the applicable constitutional provisions, the pertinent Acts of Assembly and court decisions, decides that the operation of this trust does not offend public policy as so determined.'
 
 
 55
 Following filing of the above opinion and decrees, all petitioners filed 'exceptions' to the decrees which, like their original petitions, alleged that the barring of Negroes from Girard College was contrary to the laws, statutes and public policy of Pennsylvania. The City of Philadelphia and the Commonwealth of Pennsylvania each contended that the Orphans' Court had erred in concluding:
 
 
 56
 'That the operation of the College in accordance with the language of the Will does not offend the constitution of the United States, any statute or decisional law; and that the operation of the Trust does not violate public policy.'
 
 
 57
 In their 'Exceptions', the individual petitioners contended that the Orphans' Court erred in concluding:
 
 
 58
 'That '* * * the operation of the College in accordance with the language of the Will does not offend the Constitution of the United States, any Acts of Assembly or any decisional law.' * * * 'That '* * * the operation of this Trust does not offend public policy. * * *' * * *'
 
 
 59
 In the portion of their brief filed in support of their Exceptions captioned 'The racially restrictive clause conflicts with the present public policy of the City of Philadelphia and the Commonwealth of Pennsylvania', the individual petitioners (Foust and Felder) stated:
 
 
 60
 'Summarized briefly are the statutes which express the present public policy of the Commonwealth of Pennsylvania with reference to racial exclusion even though said exclusion is by private arrangement:
 
 
 61
 '(1) The Civil Rights Statute of June 24, 1939, P.L. 872, 18 PS 4653, prohibiting discrimination against persons on account of race or color in restaurants, movies and theatres privately owned and in swimming pools even though purporting to be private membership clubs. Everett v. Harron, 380 Pa. 123 (110 A.2d 383) (1955);
 
 
 62
 '(2) The Fair Employment Practice Act of October 27, 1955, prohibiting discrimination in private employment;
 
 
 63
 '(3) The Urban Redevelopment Act of May 24, 1945, P.L. 991, section 11, 35 PS 1711, prohibiting racial discrimination by private developers who use the provisions of the Urban Redevelopment Act;
 
 
 64
 '(4) The Public Contracts Act of May 1, 1933, P.L. 103, article VIII, section 808, 53 PS 19093-808, prohibiting private contractors to discriminate in employment when working on public contracts.
 
 
 65
 'Other statutes dealing with restrictions on governmental policies with reference to race give an additional source of public policy:
 
 
 66
 '(5) Racial discrimination in public schools was abolished in 1881. Act of June 8, 1881, P.L. 76, reenacted by Act of May 18, 1911, P.L. 309, section 1405, as amended, 24 PS 13-1310;
 
 
 67
 '(6) Racial discrimination has been forbidden in public assistance, Act of July 25, 1941, P.L. 509, section 3, as amended by Act of August (22) 24, 1953, P.L. 1361, section 9, 62 PS 2513(f);
 
 
 68
 '(7) Public housing, Act of July 7, 1947, P.L. 1414, section 12, 35 PS 1590.12;
 
 
 69
 '(8) Public employment, Act of August 6, 1941, P.L. 861, section 13, 61 P.S. 331.13, Act of June 5, 1941, P.L. 84, section 23, 53 PS 351.23, Act of July 10, 1947, P.L. 1621, section 39, 53 PS 13300.23.'[21]
 
 
 70
 On page 39 of their brief sur Exceptions the individual petitioners stated as follows with respect to the statutes which it had enumerated:
 
 
 71
 'The above statutes and other collective actions clearly reveal the public policy of the City, Commonwealth and Nation to be against racial exclusion particularly where any aspect of governmental power is concerned. Totally apart from constitutional consideration, therefore, this Court should declare the racially restrictive clause in Girard's will as being inoperative as against public policy. * * * 'This Court has the power and duty to declare invalid the racially restrictive clause as contrary to public policy as indicated by the statutes of Pennsylvania'.
 
 
 72
 Again, at page 41 of this brief, it was said:
 
 
 73
 'The above statutory material affords, furthermore, a more explicit basis for this Court to declare that the public policy of Pennsylvania and Philadelphia is against racial exclusion even in private charitable institutions especially when the City is trustee. * * *'
 
 
 74
 The Orphans' Court, after en banc consideration, speaking through Judge Lefever, dismissed the exceptions to Judge Bolger's adjudication. 4 Pa.Dist. & Co. R.2d 708 (1956). Judge Lefever's opinion made no reference to the Pennsylvania statutes cited in the exceptions, simply stating at page 721, that 'no legal reason has been shown why the trust should not be continued in accordance with Girard's directions'.
 
 
 75
 The individual and intervening petitioners then appealed to the Supreme Court of Pennsylvania. In that appeal, Girard Will Case, 386 Pa. 548, 127 A.2d 287 (1956), the individual appellant-petitioners cited the Pennsylvania Public Accommodations Act and the other Pennsylvania anti-discrimination statutes which they had cited in their brief sur exceptions to the Orphans' Court adjudication, earlier detailed in this opinion. They prefaced the stated citation of the other Pennsylvania anti-discrimination statutes with this statement:
 
 
 76
 'The people of Pennsylvania now have spoken often and with a vengeance about racial discrimination in private activities and a court should be as keen and meticulous to find and apply the 1956 notions of public policy with reference to racial exclusion in private activities as it was to find an absence of such policy in 1844-- one hundred and twelve years earlier. 'Summarized briefly are the statutes which express the present public policy of the Commonwealth of Pennsylvania with reference to racial exclusion even though said exclusion as by private arrangement: '(1) The Civil Rights Statute of June 24, 1939, P.L. 872, 18 PS 4653, prohibiting discrimination against persons on account of race or color in restaurants, movies and theatres privately owned and in swimming pools even though purporting to be private membership clubs and even though swimming pools were not listed in the statute. Everett v. Harron, 380 Pa. 123 (110 A.2d 383) (1955)'
 
 
 77
 The brief further called the Supreme Court's attention to the appellants' reliance on the cited Pennsylvania statutes in this statement:
 
 
 78
 'The above statutes and other collective actions clearly reveal the public policy of the City, Commonwealth and Nation to be against racial exclusion in education particularly where any asspect of governmental activity if concerned'.
 
 
 79
 Again, at another point in the brief referred to these statements appear:
 
 
 80
 'This Court has the power and duty to declare invalid the racially restricted clause as contrary to public policy of Pennsyvania,' and 'The Pennsylvania statutory materials cited above afford, furthermore, a more explicit basis for this Court to declare that the public policy of Pennsylvania and Philadelphia is against racial exclusion even in private charitable institutions. * * *'
 
 
 81
 The City of Philadelphia in its brief also cited the Pennsylvania Public Accomodmations Act as one of the many Pennsylvania statutes supporting its contention that 'the public policy of Pennsylvania prohibits exclusion of Negro orphan boys from Girard College'. In doing so it stated:
 
 
 82
 'The Commonwealth of Pennsylvania has also expressed its anti-discrimination policy. A long series of statutes forbid discrimination on account of race or color, by public bodies as well as by private persons'. (The Public Accommodations Act was cited, along with other Pennsylvania statutes in a footnote to that statement.)
 
 
 83
 At another point in its brief the City stated:
 
 
 84
 'We therefore submit that as a matter of State law and public policy the Board (of City Trusts) may not administer the trust in a manner which requires racial discrimination among applicants for admission to Girard College'.
 
 
 85
 The appellee Board of Directors of City Trusts, in its brief, squarely challenged the appellants' contention that Pennsylvania statutory law and public policy made illegal the Board's denial of admission to Girard College on racial grounds.
 
 In doing so it stated:
 
 86
 'A bequest to establish a school for children of one race only does not violate any public policy of Pennsylvania. * * * There is no express statute outlawing private schools that admit only one race * * *. There is no statute affecting the problem before this Court. It should be slow to find public policy in an area where the Legislature has not spoken.'
 
 
 87
 The Pennsylvania Supreme Court affirmed the Orphans' Court. In doing so it stated at the very outset of its opinion:
 
 
 88
 '* * * the Court is clearly of opinion that the unanimous decision of the Orphans' Court, supported by the learned and comprehensive opinions of Judge Bolger and Judge Lefever, must be affirmed, it being clearly understood at the outset that the beneficiaries of the charity of Stephen Girard are not being determined by the State of Pennsylvania, nor by the City of Philadelphia, nor by this Court, but solely by Girard himself in the exercise of his undoubted right to dispose of his property by will, and, in so doing, to say, within the bounds of the law, who shall enjoy its benefits.' 386 Pa. 550-551, 127 A.2d 288.
 
 
 89
 The Supreme Court did not at any point in its opinion make reference to the Pennsylvania Public Accommodations Act nor to any other Pennsylvania statute cited in the appellants' briefs, nor to the State's public policy. It discussed at length the issue bearing on alleged violation of the Fourteenth Amendment and ruled that the denial of admission to the individual appellants, on the ground that they were not white, was not prohibited 'state action' under the Amendment.
 
 
 90
 The appellants appealed to the Supreme Court of the United States which, treating the appeal as a petition for writ of certiorari, ruled, in a per curiam opinion that:
 
 
 91
 'The Board which operates Girard College is an agency of the State of Pennsylvania. Therefore, even though the Board was acting as a trustee, its refusal to admit Foust and Felder to the college because they were Negroes was discrimination by the State. Such discrimination is forbidden by the Fourteenth Amendment. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Accordingly, the judgment of the Supreme Court of Pennsylvania is reversed and the cause is remanded for further proceedings not inconsistent with this opinion'. Commonwealth of Pennsylvania v. Board of Directors of City Trusts, 353 U.S. 230, 231, 77 S.Ct. 806, 807, 1 L.Ed.2d 792 (1957).
 
 
 92
 The Supreme Court of Pennsylvania subsequently vacated the decrees of the Orphans' Court in the Foust and Felder cases and remanded the causes to that Court 'for further proceedings not inconsistent with the opinion of the Supreme Court of the United States as set forth in its said mandate'.
 
 
 93
 The Orphans' Court, on the remand, on September 11, 1957, entered a decree dismissing the petitions of Foust and Felder for admission and removing the Board of Directors of City Trusts 'effective upon the appointment of a substituted trustee by this court'.[22]
 
 
 94
 The Orphans' Court, in the opinion accompanying its decree, held that 'the sole issue decided by' the Supreme Court of the United States was 'federal constitutional law' and that consequently it was free under state law, via the appointment of substituted trustees, to give effect to the exclusionary clause of Girard's will.
 
 
 95
 Petitions for reconsideration and vacation or modification of the September 11th decree were filed by Foust and Felder, jointly, the Commonwealth of Pennsylvania and the City of Philadelphia.
 
 
 96
 The Foust-Felder petition averred, inter alia, that:
 
 
 97
 'Said decree is contrary to the public policy of Pennsylvania and the United States of America'.
 
 
 98
 The Commonwealth's petition challenged the decree on other grounds; the City of Philadelphia's petition also did so and further charged that:
 
 
 99
 'The decree is contrary to the public policy of the Commonwealth of Pennsylvania and the United States of America as set forth in numerous statutes and the Philadelphia Home Charter'.
 
 
 100
 The Orphans' Court dismissed all the petitions and the petitioners appealed to the Supreme Court of Pennsylvania.
 
 
 101
 Foust and Felder, in their briefs on this appeal, In re Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844 (1958), urged that:
 
 
 102
 'The statutes set out in the footnote show that the Legislature and the courts have increasingly held invalid acts of racial exclusion, even though said racial exclusion is by private arrangement.'
 
 
 103
 In the footnote referred to, the brief specifically referred to 'Title 18, 4654' (the Public Accommodations Act), several other Pennsylvania anti-discrimination acts, and Everett v. Harron, 380 Pa. 123, 110 A.2d 383 (1955), 'where this Court (the Pennsylvania Supreme Court) fashioned an equitable remedy to aid in the enforcement of the provisions in the Civil Rights Act (Public Accommodations Act) prohibiting racial discrimination in a private swimming pool operated for profit'.
 
 
 104
 Again, in the 'Conclusion' of the Foust-Felder brief this statement was made:
 
 
 105
 'Moreover, as a matter of state law the principle of freedom of will is not here involved, and must, in any event, give way to state and federal public policy'.
 
 
 106
 The substituted trustees, in their reply brief, met head-on the contention that the Pennsylvania statutory law or public policy made their denial of admission to Girard College on racial grounds illegal, in this statement:
 
 
 107
 'Appellants have urged throughout this litigation that public policy requires, either explicitly or implicitly, expansion of the class of beneficiaries selected by Stephen Girard. Yet appellants have failed to cite any constitutional provisions, legislation, on court decision which restricts a testator's right to nominate the group which is to receive the benefits of his charity'.
 
 
 108
 The Supreme Court of Pennsylvania affirmed the decree of the Orphans' Court in its opinion at 391 Pa. 434, 138 A.2d 844. As in its first opinion at 386 Pa. 548, 127 F.2d 287, the Court's opinion made no reference to the Pennsylvania Public Accommodations Act nor any other of the state's anti-discrimination acts, although it did say at page 441, 138 A.2d at page 847:
 
 
 109
 'The appellants' effort to make a 'segregation' issue out of Stephen Girard's private charity * * * serves only to confuse and obscure the real issue involved as to the right of a private individual to bequeath his property for a lawful charitable use and have his testamentary disposition judicially respected and enforced'.
 
 
 110
 The foregoing detailed review of the prior proceedings in the State courts establishes that the District Court erred in determining that:
 
 
 111
 'The issue (with respect to the Pennsylvania Public Accommodations Act) was not decided by the Pennsylvania courts in any of the former proceeding * * *. The reason seems to be that the argument (as to 'possible application' of the Public Accommodations Act) was simply never made. * * * Never was it suggested that the Continued exclusion of Negroes from Girard College would violate the express terms of this statute (the Public Accommodations Act); never was the statute so much as quoted; never was the court apprised of its terms. References to it were not only obscure but oblique.'
 
 
 112
 and
 
 
 113
 'It is universally recognized that 'questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925). Accord, United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 37-38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) * * * (citing other cases)'.[23]
 
 
 114
 With respect to this determination, the quoted protions of the record in the former proceedings, establish conclusively that (1) Orphans' Court Judge Bolger, to whom had been presented Foust and Felder's contention in their petitions that 'The rejection * * * of your petitioner * * * violates * * * the statutes of our Commonwealth, and is contrary to the public policy of the * * * State * * *', had specifically ruled in his opinion denying the various petitions for citation that 'It has also been decided herein that the operation of the College * * * does not offend * * * any Acts of Assembly or any decisional law. * * * The Chancellor having construed * * * the pertinent Acts of Assembly and court decisions, decides that the operation of this trust does not offend public policy as so determined';[24] (2) Judge Lefever, speaking for the Orphans' Court en banc, in dismissing the exceptions to Judge Bolger's adjudication said '* * * no legal reason has been shown why the trust should not be continued in accordance with Girard's directions',[25] although the brief of the exceptants (Foust and Felder) had called to the court's attention the Pennsylvania Public Accommodations Act (see footnote 21) among other Pennsylvania anti-discrimination acts in support of the contention that Judge Bolger had erred in ruling that the operation of Girard College 'does not offend * * * any Acts of Assembly' of Pennsylvania; (3) the Supreme Court of Pennsylvania, at 386 Pa. 548, pages 550-551, 127 A.2d 287, page 288, affirmed the decree of the Orphans' Court, stating, 'the Court is clearly of opinion that the unanimous decision of the Orphans' Court, supported by the learned and comprehensive opinions of Judge Bolger and Judge Lefever, must be affirmed', and that Girard's disposition in his will was 'within the bounds of the law'. although, in their briefs, Foust and Felder had cited the Pennsylvania Public Accommodations Act in support of their contention that the Orphans' Court had erred in ruling that Girard College's exclusionary policy did not violate any Pennsylvania statutes; and (4) the Pennsylvania Supreme Court in the appeal, at 391 Pa. 434, 138 A.2d 844, which followed the dismissal of the Foust-Felder petitions in the remanded proceedings directed by the Supreme Court of the United States, again affirmed the Orphans' Court, stating, in doing so that this was not a 'segregation' case, and that Girard had bequeathed his property 'for a lawful charitable use', page 441, 138 A.2d 844. Again, this ruling was made in the face of the fact that the appellants had urged that the Public Accommodations Act and other Pennsylvania anti-discriminatory acts had made 'invalid acts of racial exclusion, even though said racial exclusion is by private arrangement'.
 
 
 115
 Applying the principles earlier stated, we are of the opinion that (1) the District Court erred in holding that the issue as to the applicability of the Pennsylvania Public Accommodations Act had not been decided in the former state court proceedings; (2) the Pennsylvania courts have decided that the Act does not prohibit the defendants from denying the minor plaintiffs herein admission to Girard College; and (3) the District Court erred in not giving effect to these decisions.[26]
 
 
 116
 For the reasons stated Paragraphs 1, 2, and 3 of the Decree of the District Court which relate to Count III will be vacated and the cause remanded for further proceedings not inconsistent with this opinion.
 
 
 117
 This disposition will permit the District Court to proceed forthwith with further proceedings relating to Count I which presents by its allegations, significant and challenging grave questions of federal constitutional proportions. See Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).
 
 
 118
 GERALD McLAUGHLIN, Circuit Judge (dissenting).
 
 
 119
 The District Court, under the Pennsylvania Public Accommodations Act, enjoined the trustees of Girard College from practicing racial discrimination in their selection of students for admission to Girard College. Specifically, the District Court's determination was based on Title 18, Purdon's Pennsylvania Statutes Annotated 4654 which makes discrimination on account of race and color in places of public accommodation a misdemeanor. Judge Lord made it clear that had the courts of the Commonwealth interpreted the statute in its relation to Girard College he would be bound by that construction under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Judge Lord, satisfied that 'the issue was noy decided by the Pennsylvania courts in any of the former proceedings', 260 F.Supp. 323 at 339, 340, considered the essential facts, weighed the appropriate precedents at his disposal and concluded that the Public Accommodations Act was applicable to Girard College. On appeal to this Court the majority has reversed the District Court, finding, in substance, that the courts of Pennsylvania have decided that the Public Accommodations Act does not prohibit that defendant trustees from denying the minor plaintiffs admission to Girard.
 
 
 120
 In so reversing the decision below the majority in the utmost of good faith has concluded that this Court is justified in avoiding a decision at this time on the merits in the litigation before us. I cannot go along with such ruling. Whether Girard College is under the Pennsylvania Public Accommodations Act is the key issue in the entire case. Should Girard be within the Act's scope these plaintiffs, if otherwise qualified, must be admitted to that student body. Therefore if the Pennsylvania courts have not passed upon the problem, it is of paramount importance that we do so now. In that posture the true reason for urgency is the unescapable conclusion, as we shall see in a moment, that the Commonwealth Public Accommodations Act does apply, does embrace Girard College, does give these plaintiffs the vital right they are seeking. It is fitting of course to talk about the Fourteenth Amendment and to see to it that the children concerned are given their full day in court under their Constitutional protection. All that does no more than send them back to trial and to appeals thereafter which could very well have them eventually join the forlorn army of lost causes, this time forever. Plaintiffs might win on that second trial but their chances are no better than that. So it seems to me that if they are to be surely given the justice they ask they must obtain it on the issue confronting us. If we are free to pass judgment on that issue, the mechanics of resolving it will be simple. To reach the point we must first see if the Pennsylvania courts have determined it. If they have not, we would be able to readily dispose of the contentions regarding the Act's applicability. The course of the problem in the Pennsylvania courts can be easily followed down to and including the recent period when the instant suit was started in the District Court, decided, and this appeal taken.
 
 
 121
 What I am saying is, plaintiffs' best hope, their only firm base, is in the upholding of the District Court judgment. The majority view that nothing final has been determined with respect to plaintiffs' rights to attend Girard is at best a chancy thing, a very poor gamble not just for the few children themselves but for the whole great reparation that will automatically follow. From both a factual and legal standpoint, the reversal by the majority opinion may well turn out not to have been merely a temporizing measure, but an adverse ruling effectively destroying the sound merits of the entire cause of action.
 
 
 122
 The result of a thorough examination of the various court proceedings regarding the Public Accommodations Act and Girard College fully supports the conclusion reached by the District Judge and rejected by a majority of this Court.
 
 
 123
 The initial action in the series of cases involving the Girard controversy was commenced in 1954 in the Orphans' Court of Philadelphia County by two Negro Boys, William Ashe Foust and Robert Felder, who were denied admission to Girard because they were not white. The various petitions filed by both sides in that case and the opinion by Judge Bolger, 4 Pa.Dist. & Co.R.2d 671 (1955), lack any reference to 18 P.S. 4654 or even the Pennsylvania Public Accommodations Act by name. The matter that was before the Orphans' Court which is considered relevant by the majority can at best be described as an appeal to public policy, i.e. that the denial of admission to Girard College of qualified Negro boys was contrary to the public policy of the City of Philadelphia, the Commonwealth of Pennsylvania and the United States of America.
 
 
 124
 Exceptions were taken to Judge Bolger's dismissal of the petitions and the cause was presented before the Orphans' Court en banc. In support of their public policy argument the brief of the individual petitioners contained a list of statutes which highlighted their position. The pertinent part of that brief reads as follows:
 
 
 125
 'Summarized briefly are the statutes which express the present public policy of the Commonwealth of Pennsylvania with reference to racial exclusion even though said exclusion is by private arrangement:
 
 
 126
 '(a) The Civil Rights Statute of June 24, 1939, P.L. 872, 18 P.S. 4653, prohibiting discrimination against persons on account of race or color in restaurants, movies and theatres privately owned and in swimming pools even though purporting to be private membership clubs. Everett v. Harron, 380 Pa. 123 (110 A.2d 383) (1955);'
 
 
 127
 The glaring fact is immediately apparent that the statute cited, 18 P.S. 4653, is not the Pennsylvania Public Accommodations Act, 18 P.S. 4654, passed upon by the District Court. The majority opinion notes that the reference to Section 4653 was an 'obvious error' since the section which prohibits 'discrimination against persons on account of race or color' is Section 4654, while Section 4653 prohibits discrimination in public accommodations 'on account of religion, creed or nationality'. The majority points out further that the error can be established since the case of Everett v. Harron, 380 Pa. 123, 110 A.2d 383 (1955), cited with reference to Section 4653, was based on a violation of Section 4654 and not Section 4653. What is obvious and the majority opinion fails to note is that the section referred to in the brief is said to prohibit racial discrimination only in 'restaurants, movies and theatres privately owned and in swimming pools even though purporting to be private membership clubs.' What is not obvious and what, if anything, should have been brought to the attention of the court, is whether or not the section cited prohibits discrimination in schools. In this respect it is Section 4654, not Section 4653, that applies to 'kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses, and all educational institutions under the supervision of this Commonwealth.'
 
 
 128
 Nor does the notation of Everett v. Harron, supra, in any way establish that the statute cited was in fact Section 4654. The questions presented for the court's consideration are set forth in the brief and no reading of the individual petioners brief will show that Everett v. Harron was decided under Section 4654. The brief handed to the court only cited Everett v. Harron, there was no summarization of the holding in that case. But even a reading of Everett v. Harron, would not bring the court's attention to the relevant area of Section 4654, because the case solely involves discrimination in the operation of a swimming pool. There is nothing in that opinion which names the section's applicability to schools.
 
 
 129
 In an opinion by Judge Lefever, 4 Pa.Dist. & Co.R.2d 708 (1956), the Orphans' Court en banc affirmed Judge Bolger, but the court's decision made no mention of the Pennsylvania Public Accommodations Act. The case was appealed to the Supreme Court of Pennsylvania. The brief of the individual petitioners contained for all practical purposes the same references used before the Orphans' Court en banc-- including the citation to Section 4653. However, the City of Philadelphia in its brief cited, for the first time, the Pennsylvania Public Accommodations Act, 18 P.S. 4654. But the mention of Section 4654 was by no means clear since it was contained in a footnote, along with other Pennsylvania statutes, to the statement that '(a) long series of statutes forbid discrimination on account of race or color, by public bodies as well as by private persons'. The appeal resulted in an affirmance of the Orphans' Court, Girard Will Case, 386 Pa. 548, 127 A.2d 287 (1956), and again the court's opinion contained no reference to the Pennsylvania Public Accommodations Act.
 
 
 130
 The claim of Foust and Felder was then placed before the Supreme Court of the United States where this country's highest tribunal reversed the Supreme Court of Pennsylvania, Commonwealth of Pennsylvania v. Board of Directors of City Trusts, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957). It was found that the refusal to admit the two Negro boys amounted to discrimination by the State and the case was remanded to the courts of Pennsylvania for further proceedings not inconsistent with the Supreme Court's opinion. Instead of admitting Foust and Felder to Girard the Orphans' Court, on remand, dismissed their petitions, removed the Board of Directors of City Trusts and substituted private trustees. Petitions for reconsideration and vacation or modification were dismissed by the Orphans' Court and recourse was again sought before the Supreme Court of Pennsylvania.
 
 
 131
 The brief of the individual petitioners before the Pennsylvania Supreme Court cited the Public Accommodations Act. This time the reference was specific to Section 4654, but as in the prior brief of the City of Philadelphia, the section was only mentioned, along with other statutes, in a footnote. The Pennsylvania Supreme Court, without acknowledging Section 4654, affirmed the Orphans' Court, Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844 (1958). Thereafter, the Supreme Court of the United States saw fit, at that time, to deny certiorari, Commonwealth of Pennsylvania v. Board of Directors of City Trusts, 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1958).
 
 
 132
 In his determination that the courts of Pennsylvania had not passed upon the relationship of the Public Accommodations Act with Girard College Judge Lord relied upon the case of Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411 (1925). That case stands for the proposition that 'questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' 266 U.S. 507 at 511, 45 S.Ct. 148 at 149. The majority feels that Webster v. Fall, supra, 'affords no nourishment to the District Court's position' and relies heavily on Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160 (1935), for the rule that '* * * matters pertinent to an issue before a court and which were clearly presented to it, by brief or appendix thereto, are to be taken as covered by the court's decision though not mentioned in the opinion.'
 
 
 133
 Webster v. Fall and Bingham v. United States are by no means irreconcilable since both cases deal with whether the disputed questions were clearly, openly and distinctly presented to the court for consideration. Bingham v. United States revolved around a determination of whether certain matters had been passed upon by the case of Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934. The Court dealt with the problem in the following manner:
 
 
 134
 'It is true that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedents. Webster v. Fall, 266 U.S. 507, 511 (45 S.Ct. 148, 69 L.Ed. 411). That, however, is not the situation in the present case. In Lewellyn v. Frick the policies and assignments, in their entirety, were definitely before the court; and this necessarily included each of the provisions which they contained. Moreover, both in the appendix to the government's brief and in the main brief of the taxpayers, the attention of the court was distinctly called to all of the provisions which are now invoked. The latter brief summarized and described the provisions of the four classes of policies which were involved * * * We think the points now urged by the government were decided in the Frick Case, and find no reason to reconsider them.' (296 U.S. 211 at 218, 219, 56 S.Ct. 180 at 181).
 
 
 135
 The proposition for this Court to decide is whether the question of alleged discrimination in the administration of Girard College under the Pennsylvania Public Accommodations Act was clearly, openly and distinctly presented to the courts of the Commonwealth for consideration. The uncontroverted fact is that in the lower courts Section 4654 was never specifically cited.[1] The only times Section 4654 was specifically alluded to were on two separate occasions before the Pennsylvania Supreme Court and in both of those the section was only stated, along with other statutory material, in a footnote. There were five opinions[2] delivered by the courts of Pennsylvania in connection with the Girard College controversy, not one of those opinions contained a single acknowledgment or reference to the Pennsylvania Public Accommodations Act. This of itself is overwhelming evidence that the subject was never presented to or passed upon by any court of the State of Pennsylvania.
 
 
 136
 The stunning though perfectly logical climax to the sorry factual detail of the failure of the Pennsylvania courts to pass upon the question before us when they had both the duty and every opportunity to do so, was spread upon the record in the latest endeavor to have the issue determined by the Commonwealth Supreme Court.
 
 
 137
 After the Public Accommodations Act branch of the case had been forced upon the District Court by reason of the Commonwealth courts not passing upon that question and after the District Court had heard that issue, the trustees petitioned the Pennsylvania Supreme Court for clarification of its earlier opinions above referred to, involving Girard College 'by specific declaration as to the applicability of the Pennsylvania Public Accommodations Act to Girard College:' The Trustees stated as two of the cogent reasons for that action:
 
 
 138
 '(b) The extent of the applicability of the Public Accommodations Act to institutions such as Girard College, * * * is a matter of great importance which should be declared only by the highest court of the Commonwealth and not by a federal court;
 
 
 139
 '(c) The federal courts in the pending proceedings will be bound by an explicit decision of this, the highest court of the Commonwealth, upon this matter of State law (Erie R.R. v. Tompkins, 304 U.S. 64 (58 S.Ct. 817, 82 L.Ed. 1188));'
 
 
 140
 The Pennsylvania Supreme Court filed its opinion on the petition December 6, 1966, Girard Clarification Petition, 423 Pa. 297, 224 A.2d 761 (1966). The opinion is short and we quote it in full:
 
 
 141
 'The sole issue before this Court is whether we should entertain a petition for clarification of two opinions rendered by this Court in the Girard College Trusteeship, 391 Pa. 484, 138 A.2d 844 (1958), and Girard Will Case, 386 Pa. 548, 127 A.2d 287 (1956), eight and ten years ago respectively. Only two members of the present Court participated in the first Girard decision, and three, in the second.
 
 
 142
 'Significantly the district court refused to abstain from deciding the state issues involved in this controversy. Commonwealth v. Brown et al., Trustees of the Estate of Stephen Girard, 260 F.Supp. 323 (E.D.Pa.1966). Due regard for the proper administration of our dual federal-state system of judicial tribunals suggests that it would be highly inappropriate for this Court to entertain the petition for clarification, since the district court's decision is currently on appeal before the United States Court of Appeals for the Third Circuit.
 
 
 143
 'It should be emphasized, however, that the determination by this Court not to entertain the petition in no way implies a view on the merits of any issue in the controversy presently before the federal courts.
 
 
 144
 'The petition for clarification is therefore denied.'
 
 
 145
 The significance referred to in the above opinion of the District Court's refusal to abstain from deciding the precise point of whether the State Act governed Girard College lies in the unescapable fact that abstention was no longer discretionary with the District Court or if it was, that there was definitely no abuse thereof by the trial judge. The Commonwealth courts, having the obligation of determining this important state business which was directly before them, had not done so. Finally, on September 21, 1966, while the suit was before the District Court, the Commonwealth Supreme Court was strongly advised by the petition of the Girard trustees that 'The extent of the applicability of the Public Accommodations Act to institutions such as Girard College, * * * is a matter of great importance which should be declared only by the highest court in the Commonwealth and not by a federal court' and that 'The federal courts in the pending proceedings will be bound by an explicit decision of this, the highest court of the Commonwealth, upon this matter of State law (Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188);'. In the face of the vital necessity for the Commonwealth's highest court to immediately accept its responsibility to rule on the phase of the controversy submitted to it, that court not only flatly refused to do so but in addition declined to be committed to any view whatsoever regarding its merits. It stated that its reason for that attitude was because 'it would be highly inappropriate for this Court to entertain the petition for clarification, since the district court's decision is currently on appeal before the United States Court of Appeals for the Third Circuit.' The entire sense of this, the Commonwealth court's latest statement of the situation of the State part of the Girard College dispute, is that those courts have never decided Girard's status as to the Public Accommodations Act and that they are quite content to let the Federal Courts bear the heat and burden of the necessarily momentous determination with which they are confronted. There are two dissents filed. It is to be regretted that the first, while admitting that the State Supreme Court should pass on the point involved, is fundamentally a vehicle for utterly unwarranted attack upon the Federal District Judge who had no alternative but to proceed with this onerous litigation and did so with honor, courage, industry and high judicial competence. The second dissent by a member of the Court who had participated in the two previous Girard actions comments:
 
 
 146
 'In the long and exhaustively discussing opinions filed in those two cases, not one mention is made of the Public Accommodations Act. Indeed, the petitioners themselves (City of Philadelphia, Commonwealth of Pennsylvania and two applicants for admission to Girard College) made only the slightest reference to the Act in their briefs and did not argue it orally at all.
 
 
 147
 'It now develops, however, that it was a mistake not to have urged on this Court the applicability of the Public Accommodations Act to the facts in the Girard Will Case and it was a grave oversight of this Court not to have sua sponte ruled the Public Accommodations Act controlling.' (423 Pa. 297 at 304, 224 A.2d 761 at 764).
 
 THE PENNSYLVANIA PUBLIC ACCOMMODATIONS ACT
 
 148
 The District Judge correctly found that Girard College was subject to the provisions of the Pennsylvania Public Accommodations Act. In construing the Public Accommodations Act the court's opinion was strictly limited to a finding that the Act, whatever its breadth, was applicable to Girard and there was no holding on the effect of the Act's provisions with respect to other schools. Judge Lord stated:
 
 
 149
 'Even the most exclusive private school is probably not, in the view of this statute, a social club (clubs outside the provisions of the Act). We, however, are not called upon to settle definitely the applicability of the Public Accommodations Act to each and every private school in Pennsylvania. We would not do that even if we could. All we need and do decide now is that-- on any fair reading of the statute-- Girard College, conceived by its founder as a charitable establishment for training, education and maintenance, * * * and presently performing these functions for about 700 orphans, is an educational institution under the supervision of the Commonwealth and is not in its nature distinctly private.' (260 F.Supp. 323 at 355, 356).
 
 
 150
 The argument is made on behalf of the trustees that Girard College is not in fact a school or an educational institution under the supervision of the Commonwealth. In support of their position appellants refer to the opinion of the Pennsylvania Supreme Court by the then Chief Justice Horace stern who characterized Girard as '* * * not merely a school at all but what Girard himself called in a codicil to his will, an 'orphan Establishment,' * * *' 386 Pa. 548 at 562, 127 A.2d 287 at 293. It is demonstrable that these points are not well taken.
 
 
 151
 A place of public accommodation under Section 4654(c) includes, among others, 'kindergartens, primary and secondary schools, academies, colleges and universities, extension courses, and all educational institutions under the supervision of this Commonwealth'. Girard College is an institution which maintains an elementary and secondary school with a combined enrollment of approximately 700 students. Girard is accredited by the Middle States Association of Colleges and Secondary Schools and the faculty of its secondary school alone comprised 39 members as of 1965. The pamphlets distributed by Girard College to attract applicants underscore the desirability of a Girard education. The cover of one of these pamphlets reads: 'GIRARD-- a free private boarding school for boys who have lost their fathers by death'. Plainly Girard College is an educational institution within the meaning of the Public Accommodations Act and the circumstance that the school is attended only by fatherless boys does not detract from Girard's function as an educational institution. But even if Girard College does not come within the enumerated places of public accommodation of Section 4654(c) it would be subject to the provisions of the Act since the Supreme Court of Pennsylvania has held in the case of Everett v. Harron, 380 Pa. 123, 127, 110 A.2d 383, 385 (1955), that '* * * the list does not purport to be exclusive of all places other than those specifically named.' The deciding factor is whether the place is one of public accommodation and Girard is such a place.
 
 
 152
 The only point which warrants further deliberation concerns whether or not Girard College comes within the exclusionary provision of the Public Accommodations Act. Section 4654(d) provides:
 
 
 153
 '(d) Nothing contained in this section shall be construed to include any institution, club or place or places of public accommodation, resort or amusement, which is or are in its or their nature distinctly private.'
 
 
 154
 The substitution of private trustees by the Orphans' Court in 1958 has not shorn Girard College of its distinctly public nature. The College, enabled by an act of the Pennsylvania State Legislature, 53 P.S. 16365, was administered from 1869 to 1958 by the 'Board of Directors of City Trusts of the City of Philadelphia'. This Board was comprised in part of elected officials, including the mayor of Philadelphia. In 1957 the Supreme Court of the United States held that 'the Board which operates Girard College is an agency of the State of Pennsylvania.' 353 U.S. 230 at 231, 77 S.Ct. 806 at 807, 1 L.Ed.2d 792. Since 1848 Girard College has been developed and nurtured by the City and Commonwealth and the substitution of private trustees cannot at this point separate Girard from its history as a public institution. Girard College currently owes its well deserved acclaim as much to the City of Philadelphia and the Commonwealth of Pennsylvania as to its founder and guiding spirit, Stephen Girard.
 
 
 155
 The United States Supreme Court in the recent appeal in Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), has ruled on the standard to be adopted in distinguishing between the public and private sector. The decision, though under the Fourteenth Amendment, was concerned with a situation where the facts were not unlike those before us. In Evans a park was devised to the City of Macon, Georgia to be maintained only for the use of white people. The City, since it could not legally enforce racial segregation in the park, resigned as trustee and three individual trustees were appointed. The Supreme Court reversed the Supreme Court of Georgia which had approved the resignation of the City and the substitution of the private trustees. Mr. Justice Douglas, speaking for the Court, stated:
 
 
 156
 'We only hold that where the tradition of municipal control had become firmly established, we cannot take judicial notice that the mere substitution of trustees instantly transferred this park from the public to the private sector.' (382 U.S. 296 at 301, 86 S.Ct. 486 at 489).
 
 
 157
 Evans v. Newton is particularly relevant to our appeal because the exclusion of an institution from the provisions of the Public Accommodations Act requires something more than a finding that a school or college is private-- it must be distinctly private. In the years since Girard was founded it has acquired plenary public characteristics that set it far apart from a distinctly private place of public accommodation within the purview of Section 4654(d) of the Pennsylvania Public Accommodations Act.
 
 
 158
 1957 DECREE OF THE UNITED STATES SUPREME COURT
 
 
 159
 When the Girard College controversy was before the United States Supreme Court it was determined that the Philadelphia Board of Trusts was a State agency and that the Board's refusal to admit the two Negro boys to Girard amounted to 'discrimination by the State.' The case after that was remanded to the courts of Pennsylvania for proceedings not inconsistent with the Supreme Court's opinion. It is self evident that the Supreme Court's decree has never been complied with by the Pennsylvania courts.
 
 
 160
 At the outset it should be noted that no attempt is made here to decide this appeal on a Constitutional ground not advanced to this Court for review. A determination of whether the decree of the Supreme Court has ever been complied with is one altogether relying on the uncontrovertible facts appearing in the record. Moreover, it is the duty of this Court in dealing with a matter upon which the Supreme Court of the United States has spoken and ordered further proceedings in compliance thereof, to rule as to whether that decree has been followed. There was a holding by the Pennsylvania Supreme Court that the Orphans' Court in appointing the private trustees had obeyed the order of the United States Supreme Court. However, since this question is one of purely federal stature that ruling has no binding effect on this Court. It has been further asserted that when the Supreme Court of the United States refused to grant certiorari it approved of the action taken by the Orphans' Court. This charge must be rejected in view of the Supreme Court's consistent holding that such denial '* * * does not imply approval of anything that may have been said by the lower court in support of its decision', Agoston v. Commonwealth of Pennsylvania, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619 (1950). See also, House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945); Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949).
 
 
 161
 In 1954 the Supreme Court of the United States decided the case of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), holding that segregation in the field of public education is a denial of the equal protection of the laws. Three years later the Supreme Court, citing Brown, found that discrimination by the Board of City Trusts was forbidden by the Fourteenth Amendment. The Supreme Court made it quite clear that from that point on the Constitution of the United States afforded protection from any type of State discrimination in public education. This directive applied as much to the courts of Pennsylvania as to the Board of City Trusts. The action by the Orphans' Court in appointing private trustees to, in the words of the majority, 'give effect to the exclusionary clause of Girard's will' amounted to State discrimination and the type of invidious State action declared unconstitutional in Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), and Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).
 
 
 162
 The purpose of the Supreme Court's order was the elimination of State discrimination not just the removal of the Board of City Trusts. Under no circumstances was that decree effectuated by the substitution of private trustees in order to have the racial restrictions enforced by another State body i.e. the Orphans' Court. Nor was that decree restricted to the benefit of Foust and Felder, it was meant to protect all those who would bear the brunt of State discrimination. Just as the state courts in Shelley v. Kraemer were prohibited by the Fourteenth Amendment from enforcing the racially oriented restrictive covenants, private agreements, so too the courts of Pennsylvania may not, in their anxiety to make Girard wholly private, act in a manner that would deny the citizens of Pennsylvania the equal protection of the laws. The Orphans' Court had the power to appoint substituted trustees but it could not do so for the purpose of carrying out the discriminatory policies of the Girard will since it was dealing with public and not private education. The public nature of Girard as an educational institution was beyond the power of the Orphans' Court to disturb and its attempt to bring about that sort of change was in disregard of the Supreme Court's decree and the Fourteenth Amendment.
 
 
 163
 There is nothing before us which can reasonably lend credence to the attempted pragmatic accommodation worked out in the majority opinion. The Supreme Court of Pennsylvania from 1954 down to and including the present has steadfastly refused to answer the query whether Girard College comes under the Public Accommodations Act umbrella. The District Court recognizing and fulfilling its duty, heard the matter and held that Girard was subject to the Act. Under the facts and law that judgment was right and just. I think it should be affirmed.
 
 
 164
 Judge WILLIAM F. SMITH concurs in this dissent.
 
 
 
 [1]
 The defendant trustees are charged with the duty of administering Girard College
 
 
 [2]
 260 F.Supp. 332
 
 
 [3]
 260 F.Supp. 335
 
 
 [4]
 260 F.Supp. 358
 
 
 [5]
 260 F.Supp. 343
 
 
 [6]
 With respect to its deferring decision on Count II, the District Court said: 'Likewise, a decision on the cy pres and will construction questions of count two would no doubt be far more enlightened if preceded by proof of the precise nature and extent of the alleged prior deviations from the will and the changed circumstances on which plaintiffs rely'. 260 F.Supp. 358. The District Court subsequently, in a supplemental opinion accompanying its decree, stated that inasmuch as it provided therein that 'Plaintiffs may institute an action in the Orphans' Court of the County of Philadelphia, in order that the courts of the Commonwealth of Pennsylvania may have due opportunity to decide promptly and expiditiously all issues involved in count two of plaintiffs' complaint', that '* * * we have now concluded that it would be appropriate for us to exercise our discretionary authority to abstain as to count two'. 260 F.Supp. 367-368 and 260 F.Supp. 366
 
 
 [7]
 260 F.Supp. 339-340
 
 
 [8]
 The Pennsylvania Public Accommodations Act, as amended by the Act of June 24, 1939, P.L. 872, 654, 18 P.S. 4654, provides in relevant part as follows:
 (a) All persons within the jurisdiction of this Commonwealth shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. Whoever, being the owner, lessee, proprietor, manager, superintendent, agent or employe of any such place, directly or indirectly refuses, withholds from, or denies to, any person, any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publishes, circulates, issues, displays, posts or mails any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such places, shall be refused, withheld from, or denied to, any person on account of race, creed, or color, or that the patronage or custom thereat of any person belonging to, or purporting or color is unwelcome, race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than one hundred dollars ($100), or shall undergo imprisonment for nor more than ninety (90) days, or both.
 (c) A place of public accommodation, resort or amusement, within the meaning of this section shall be deemed to include inns, taverns, roadhouses, hotels, whether conducted for the entertainment of transient guests, or for the accommodation of those seeking health, recreation or rest, or restaurants or eating houses, or any place where food is sold for consumption on the premises, buffets, saloons, barrooms, or any store, park, or inclosure where spiritous or malt liquors are sold, ice cream parlors, confectionaries, soda fountains, and all stores where ice cream, ice and fruit preparations, or their derivatives, or where beverages of any kind, are retailed for consumption on the premises, drug stores, dispensaries, clinics, hospitals, bathhouses, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses, and all educational institutions under the supervison of this Commonwealth, garages and all public conveyances operated on land or water, as well as the stations and terminals thereof.
 (d) Nothing contained in this section shall be construed to include any institution, club or place or places of public accommodation, resort or amusement, which is or are in its or their nature distinctly private, or to prohibit the mailing of a private communication in writing sent in response to a specific written inquiry. 1939, June 24, P.L. 872, 654.
 
 
 [9]
 260 F.Supp. 357
 
 
 [10]
 The District Court earlier denied defendants' motion to stay the proceedings pending disposition of a petition which they had filed in the Supreme Court of Pennsylvania requesting clarification of that Court's prior opinions at 386 Pa. 548, 127 A.2d 287 (1956) (Girard Will Case), and 391 Pa. 434, 138 A.2d 844 (1958) (Girard College Trusteeship), in cases where the barring of negro male orphans by the trustees of the Girard Estate had been unsuccessfully challenged. The Supreme Court of Pennsylvania later denied defendants' petition for clarification, two justices dissenting
 
 
 [11]
 The Adjudication contained 51 'Findings of Fact', a 'Discussion', and 'Conclusions of Law'. In Paragraph 17 of the Findings of Fact the District Court found:
 'Girard College is a primary school, a secondary school and a high school, and is an educational institution, although only one-third of the cost of running it is attributed to educational functions'.
 In Paragraph 40 of the Findings of Fact it was found:
 'Girard College is an educational institution under the supervision of the Commonwealth'.
 In its Conclusions of Law, the District Court stated, in Paragraph 3:
 'Girard College is a primary school, a secondary school, a high school, and an educational institution under the supervision of the Commonwealth and is not distinctly private in its nature within the meaning of the Pennsylvania Public Accommodations Act of June 11, 1935, P.L. 297, as amended by the Act of June 24, 1939, P.L. 872, 18 P.S. 4654'.
 And in Paragraph 4:
 'Girard College is covered by Sections (a) and (c) of said Act, and is not within the proviso of Section (d)'.
 
 
 [12]
 Paras. 5, 7, Conclusions of Law, 260 F.Supp. 367
 
 
 [13]
 260 F.Supp. 366
 
 
 [14]
 260 F.Supp. 367-368
 
 
 [15]
 See Mr. Justice Frankfurter's concurring opinion in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 442, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)
 
 
 [16]
 360 F.Supp. 339-340
 
 
 [17]
 The Will, dated February 16, 1830, with two Codicils, dated December 25, 1830 and June 20, 1831, was probated at Philadelphia on December 31, 1831
 
 
 [18]
 Will of Stephem Girard, Clause XXI
 The institution is not a 'College' in the popular sense of the word, but a place where fatherless boys between the ages of 6 and 18 are housed and provided with the necessities of life as well as an elementary and secondary education. The Pennsylvania Supreme Court has construed the word 'orphan' in Girard's Will as meaning only a boy whose father is deceased rather than one who has lost both parents. Soohan v. City of Philadelphia, 33 Pa. 9 (1859).
 
 
 [19]
 Repealed by Act of November 19, 1959, P.L. 1526 'in so far as it relates to the control and management of the persons of any orphans'. See 53 P.S. 16365 (1965 Cum.Supp.)
 
 
 [20]
 Four other Negro boys who had joined in the petition subsequently withdrew from the proceedings
 
 
 [21]
 It must be noted with respect to the cited statutes that the reference to 4653 as the act 'prohibiting discrimination against persons on account of race or color in restaurants, movies and theatres privately owned and in swimming pools even though purporting to be private membership clubs' is in obvious error. It is 4654 which prohibits the discriminatory practices stated. Section 4653 prohibits discrimination in public accommodations 'on account of religion, creed or nationality' and not 'on account of race or color'. The citation of Everett v. Harron, 380 Pa. 123, 110 A.2d 383 (1955), at the conclusion of the reference to 4653, establishes the error in statutory designation. That case was based on violation of 4654 and not on 4653
 
 
 [22]
 The Orphans' Court entered a decree on October 4, 1957 appointing substituted trustees of the Estate of Stephen Girard
 
 
 [23]
 260 F.Supp. 339, 340
 
 
 [24]
 4 Pa.Dist. & Co.R.2d 671, 702-703 (1955)
 
 
 [25]
 4 Pa.Dist. & Co.R.2d 708, 721 (1956)
 
 
 [26]
 We specifically note that the District Court erred in ruling that the issue as to the Public Accommodations Act merely lurked in the record and for that reason could 'not be considered' as having been decided in the former state proceedings, under the enunciated holding in Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925), that 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents'
 Webster v. Fall affords no nourishment to the District Court's position.
 Neither does United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) which it also cited. In that case it was held that a decision in a case was 'not a binding precedent' on a point under consideration because the point 'was not there raised in briefs or argument nor discussed in the opinion of the Court'. 344 U.S. at 38, 73 S.Ct. at 69. The other cases cited by the District Court on this score are similarly inapposite.
 In Bingham v. United States, supra, where, as earlier pointed out, it was ruled that matters pertinent to an issue before the court which were presented to it, are to be taken as covered by the decision although not mentioned in the opinion, the court specifically held that the provisions of policies and assignments, to which attention was called 'in the appendix' and briefs, were to be considered as having been ruled upon by the court although not mentioned in its opinion.
 The issue as to the Public Accommodations Act was 'brought to the attention of the court' in the Orphans' Court and Pennsylvania Supreme Court proceedings.
 
 
 [1]
 This fact alone is sufficient to base a conclusion that Section 4654 was never ruled upon in connection with Girard College by a court of Pennsylvania because if, as in this case, the statute was never cited in the lower court no appellate court would consider the problem
 
 
 [2]
 (1) Orphans' Court opinion by Judge Bolger, 4 Pa.Dist. & Co.R.2d 671 (1955). (2) Opinion by Judge Lefever for the Orphans' Court en banc, 4 Pa.Dist. & Co.R.2d 708 (1956). (3) Supreme Court of Pennsylvania's opinion in Girard Will Case, 386 Pa. 548, 127 A.2d 287 (1956). (4) Opinion of the Orphans' Court on remand (not reported). (5) Supreme Court of Pennsylvania's opinion in, Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844 (1958)